STATE OF CONNECTICUT *v.* TYRONE ADAMS
(12650)

O'CONNELL, HEIMAN and SPEAR, Js.

Argued September 19—decision released December 27, 1994

---

*Elizabeth M. Inkster,* assistant public defender, for the appellant (defendant).

*Rita M. Shair,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, *Michael Pepper,* assistant state's attorney, and *William Westcott,* law student intern, for the appellee (state).

O'CONNELL, J. The defendant appeals from his conviction, after a jury trial, of two counts of aiding and abetting manslaughter in the first degree in violation of General Statutes §§ 53a-8 and 53a-55 (a) (1).[1]

On appeal, the defendant claims that the trial court improperly (1) instructed the jury concerning the use of prior inconsistent statements, (2) denied him his right of cross-examination, and (3) instructed the jury on consciousness of guilt. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. At approximately 3 a.m. on September 21, 1991, police responded to a report of shots fired at the Athenian Diner on Whalley Avenue in New Haven. At the

---

[1] The defendant was initially charged with two counts of aiding and abetting murder in violation of General Statutes §§ 53a-8 and 53a-54a and one count of aiding assault in the first degree in violation of General Statutes §§ 53a-8 and 53a-59 (a) (1). The trial court granted the defendant's motion for judgment of acquittal on the assault charge and, after the state filed a substitute information charging two counts of aiding and abetting murder, the jury found the defendant guilty of two lesser included offenses of aiding manslaughter in the first degree.

scene, the police found a hostile crowd of fifty to 100 people surrounding two wounded men lying on the ground. These two men, Hury Poole and Andrew Paisley, were later pronounced dead at a hospital. Another victim, Christopher Roach, had been shot in the arm.

An altercation had originated in the diner and continued outside. A crowd gathered, including the defendant; his friend Daryl Valentine, who was the shooter;[2] and Byron McFadden, who would later testify at trial.

As Roach, Poole and Paisley joined the crowd, Roach heard the defendant shout, "Shoot him, shoot him, f _ _ _ it, shoot him." Valentine shot Poole and Paisley, ran to a car parked in the driveway of the diner and got in on the passenger side. Roach ran after him. As Roach approached the car, Valentine fired at him, hitting him in the arm. The car with Valentine in it sped away, followed shortly thereafter by the defendant, who drove off in his own car. Additional facts are included in the analysis.

I

The defendant first claims that the trial court improperly instructed the jury that it could consider the prior inconsistent statements of two witnesses in weighing the witnesses' credibility. The defendant argues that the court should have instructed the jury that the prior statements could be used for substantive purposes as well as for impeachment.[3] *State* v. *Whelan*, 200 Conn. 743, 752, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986).

---

[2] Valentine was charged separately and is not involved in this appeal.

[3] The jury instruction relating to prior inconsistent statements was as follows: "In assessing the credibility of a witness, you may consider whether a witness has on prior occasions made a statement or statements which are inconsistent with his testimony on the witness stand. As with all questions of credibility, however, it is exclusively your function to determine the extent to which any such inconsistency might affect the credibility of a particular witness."

" 'For many years Connecticut followed the common-law rule; namely, prior inconsistent statements were inadmissible hearsay when offered for substantive purposes. In 1986 Connecticut altered its rule to admit certain prior inconsistent statements if given under "prescribed circumstances reasonably assuring reliability." . . . Rather than adopt a rule admitting all such statements, however, [*Whelan*] restricted the new exception to "prior *written* inconsistent statements *signed* by the declarant who has *personal knowledge* of the facts stated, when the declarant *testifies* at trial and is subject to *cross-examination*." . . .' " (Citations omitted; emphasis in original.) *State* v. *Holloway*, 209 Conn. 636, 649, 553 A.2d 166, cert. denied, 490 U.S. 1071, 109 S. Ct. 2078, 104 L. Ed. 2d 643 (1989). It is not disputed that the witnesses' statements in the present case qualify under *Whelan*.

Although the defendant filed a written request to charge in connection with the prior statements, he did not include a request that the statements could be used for substantive purposes, nor did he take exception to the charge as given. Practice Book § 852.[4] Because the defendant did not preserve the claim for review, we will consider it only if it qualifies under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

Under *Golding*, a defendant can assert a constitutional claim not preserved for trial, only if all of the following conditions are met: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fun-

---

[4] Practice Book § 852 provides: "The supreme court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered. Counsel taking the exception shall state distinctly the matter objected to and the ground of objection. Upon request, opportunity shall be given to present the exception out of the hearing of the jury."

damental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." Id. If any one of the conditions is missing, the defendant's claim will fail. Id., 240.

The second *Golding* prong, which requires the defendant to show that the unpreserved claim was of constitutional magnitude, is implicated here. This is not a case of first impression. The defendant acknowledges that on more than one occasion our Supreme Court has declared that failure to give a proper *Whelan* instruction presents an evidentiary and not a constitutional claim. *State* v. *Wooten*, 227 Conn. 677, 701, 631 A.2d 271 (1993); *State* v. *Tatum*, 219 Conn. 721, 738, 595 A.2d 322 (1991); *State* v. *Holloway*, supra, 209 Conn. 650–51.

Despite the foregoing precedents, the defendant urges us to reconsider the matter and to determine that an erroneous *Whelan* instruction constitutes a matter of constitutional dimension. This, we cannot do. We will not reexamine or reevaluate Supreme Court precedent. Whether a Supreme Court holding should be reevaluated and possibly discarded is not for this court to decide. *Greger* v. *Greger*, 22 Conn. App. 596, 599, 578 A.2d 162, cert. denied, 216 Conn. 820, 581 A.2d 1055 (1990). Accordingly, the defendant is not entitled to *Golding* review of this issue.

The defendant fares no better under his claim for plain error review.[5] Such "review is reserved for truly extraordinary situations where the existence of the

---

[5] Practice Book § 4185 provides: "The court on appeal shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." *State* v. *Boles*, 223 Conn. 535, 551, 613 A.2d 770 (1992). The failure by the trial court to give, sua sponte, an instruction that the defendant did not request, that is not of constitutional dimension and that is not mandated by statute or rule of practice is not such an obvious error that it will affect the fairness and integrity of and public confidence in the judicial proceedings.

We decline to review this unpreserved claimed instructional error.

## II

The defendant next claims that the trial court improperly limited his cross-examination of Roach in violation of his confrontation rights under amendments six and fourteen to the United States constitution, and article first, § 8, of the Connecticut constitution. The defendant furnished a separate analysis of his claim under the state constitution.

Roach gave two statements to the police. In the first statement, given on September 30, 1991, a few days after the shooting, he said that he had been very drunk at the time of the crime but was certain that the defendant's involvement had been limited to a fight with the two victims before they were shot. He also said that he did not remember having seen the defendant's car that night.

On October 5, 1991, Roach was involved in a shooting that resulted in his being arrested and charged with attempted assault in the first degree, criminal use of a firearm, reckless endangerment and unlawful discharge of a firearm. The complainant in that case was the defendant in this case.

Thereafter, on February 16, 1993, Roach gave the police a second sworn statement in which he remem-

bered the details of the incident at the Athenian Diner. Specifically, he remembered having seen the defendant's car parked immediately in front of Valentine's vehicle.

The trial court allowed the defendant to cross-examine Roach concerning the nature of the charges against him and the fact that the defendant was the complainant. The trial court, however, would not allow the defendant to cross-examine the witness concerning the details of the incident giving rise to Roach's arrest, including such matters as the exact circumstances of the crimes, methods of committing the crimes and the relationship of a particular witness to the defendant.[6] The court ruled that such details were not necessary for the jury to assess any bias or motive that the witness might have in testifying in the present case.

"It is firmly established that cross-examination regarding motive, bias, interest and prejudice is a matter of right and may not be *unduly* restricted. . . . The right to cross-examine adverse witnesses is not absolute, however, and limitations on the scope of cross-examination are within the sound discretion of the trial court, as long as the defendant has been allowed sufficient cross-examination to meet the requirements of the confrontation clause. . . . The defendant's constitutional right to confrontation is satisfied if he is given the opportunity to expose facts from which the jury can appropriately draw inferences concerning a witness' reliability." (Citations omitted; emphasis in

[6] "While the defendant made no offer of proof to support the evidence to which the state objected, the defendant did take proper exceptions to the court's rulings and clearly stated that he was attempting to elicit evidence of bias. We are unaware of any of our cases, and the state has not presented us with any, requiring an offer of proof in order to preserve a claim of infringement on the right of cross-examination." *State* v. *Santiago*, 224 Conn. 325, 330–31 n.6, 618 A.2d 32 (1992).

original; internal quotation marks omitted.) *State* v. *Cobb*, 27 Conn. App. 601, 611–12, 605 A.2d 1385 (1992).

Restrictions on the scope of cross-examination are within the sound discretion of the trial court. *State* v. *Castro*, 196 Conn. 421, 425, 493 A.2d 223 (1985). Every reasonable presumption should be given in favor of the correctness of the trial court's ruling. *State* v. *Johnson*, 21 Conn. App. 291, 296–97, 573 A.2d 1218 (1990). "To establish an abuse of discretion, it must be shown that restrictions imposed on cross-examination were clearly prejudicial." Id., 297. No prejudice was shown to have occurred in this case.

## III

In his final claim, the defendant contends that the trial court's jury instruction concerning consciousness of guilt was not supported by the evidence.[7] There were two categories of consciousness of guilt evidence at trial, inconsistencies between the defendant's two sworn statements and evidence of flight.

[7] The relevant portion of the court's instruction was as follows: "Also, in this state the law recognizes a principle known as consciousness of guilt. When a person is on trial for a criminal offense, it is proper to show his conduct as well as any declarations made by him subsequent to the alleged criminal offense which may fairly have been influenced by that criminal act. The state here claims that the defendant made certain statements to investigators concerning his activities of September 21, 1991, and the state further claims that these statements were false in whole or in part. If you find that the defendant intentionally made material false statements in connection with the alleged crime, you may find that such statements tend to show a guilty connection with the crime.

"You have also heard testimony from which you may conclude that the defendant fled from the scene of the shootings. Unexplained flight may also tend to show consciousness of guilt. It is for you, however, to decide whether such conduct, if you find it to be proved, reflects consciousness of guilt and what weight if any is to be attributed to such conduct. You may consider all of the conduct of the defendant subsequent to the alleged event in determining whether any of such conduct justifies a finding of a guilty conscience. Those are general principles that apply to most cases and to this case in some circumstances."

In seeking to introduce evidence of a defendant's consciousness of guilt, "[i]t is relevant to show the conduct of an accused [e.g., flight], as well as *any* statement made by him subsequent to an alleged criminal act, which may be inferred to have been influenced by the criminal act." (Emphasis added.) *State* v. *Burak*, 201 Conn. 517, 533, 518 A.2d 639 (1986), citing *State* v. *Reid*, 193 Conn. 646, 655, 480 A.2d 463 (1984). Once the evidence is admitted, if it is sufficient for a jury to infer from it that the defendant had a consciousness of guilt, it is proper for the court to instruct the jury as to how it can use that evidence. It is then for the jury to consider any ambiguity in the evidence. *State* v. *Knighton*, 7 Conn. App. 223, 508 A.2d 772 (1986).

Turning first to the flight aspect, the defendant argues that an instruction on flight as consciousness of guilt is not warranted unless the defendant knew he was wanted by the police. That is not the law in this state. *State* v. *Piskorski*, 177 Conn. 677, 723, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979). The standard is whether the evidence is relevant. Id.

"Generally speaking, all that is required is that the evidence have relevance, and the fact that ambiguities or explanations may exist which tend to rebut an inference of guilt does not render evidence of flight inadmissible but simply constitutes a factor for the jury's consideration." Id.

At trial, McFadden testified that he had seen the defendant get into his car and leave the scene. A police officer testified that he had seen the defendant driving rapidly down Whalley Avenue away from the shooting scene minutes after the incident. The testimony of both witnesses was relevant because it explained why the defendant was not at the crime scene when the police arrived.

The other facet of consciousness of guilt was the defendant's inconsistent sworn statements to police. "In the present case, the defendant's statements were relevant because they were made subsequent to an alleged criminal act and they may be inferred to have been influenced by that alleged act. Those statements were, therefore, properly admitted. The defendant's statements . . . were [also] sufficient to allow the jury to infer that the statements were influenced by the alleged criminal act. Thus, the trial court was correct both in admitting them and, subsequently, in giving a consciousness of guilt instruction to the jury regarding them. It was then for the jury to consider possible alternative explanations for the statements." *State* v. *Aleksiewicz*, 20 Conn. App. 643, 653, 569 A.2d 567 (1990).

There was sufficient evidence to support the consciousness of guilt instruction. It was proper to instruct the jury that if it found that the defendant intentionally made false statements concerning the crime that the jury could conclude that such statements showed a guilty connection with the crime. Id., 652.

Sufficiency of evidence was the sole objection to the consciousness of guilt instruction that the defendant raised in the trial court. A party is not entitled to have a claim reviewed on appeal on grounds different from those presented at trial. *State* v. *Braman*, 191 Conn. 670, 684–85, 469 A.2d 760 (1983). To hold otherwise would result in trial judges' being found to have erred on questions never fairly presented to them. *State* v. *Brice*, 186 Conn. 449, 457, 442 A.2d 906 (1982). Accordingly, we will not consider any other claims asserting impropriety of the trial court's consciousness of guilt instruction.

The judgment is affirmed.

In this opinion the other judges concurred.