# STATE OF CONNECTICUT *v.* KEVIN MIDDLEBROOK
## (AC 16863)

Landau, Schaller and Dupont, Js.

Argued November 5, 1998—officially released February 9, 1999

*Katherine S. Goodbody*, special public defender, for the appellant (defendant).

*Ronald G. Weller*, assistant state's attorney, with whom were *Russell C. Zentner*, assistant state's attorney, and, on the brief, *John T. Redway*, state's attorney, and *John Ventorilli*, certified legal intern, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Kevin Middlebrook, appeals from the judgment of conviction, rendered after a jury trial, of burglary in the third degree in violation of General Statutes § 53a-103,[1] larceny in the first degree in violation of General Statutes § 53a-122[2] and criminal mischief in the third degree in violation of General Statutes § 53a-117.[3] On appeal, the defendant claims that the trial court improperly (1) admitted prior misconduct evidence with respect to the issues of intent and motive, (2) admitted a postarrest statement of the defendant as evidence of his consciousness of guilt, (3) admitted evidence of the prearrest silence of the defendant, (4) determined that the evidence presented by the state was sufficient to sustain the conviction,

---

[1] General Statutes § 53a-103 (a) provides: "A person is guilty of burglary in the third degree when he enters or remains unlawfully in a building with intent to commit a crime therein."

[2] General Statutes § 53a-122 provides in relevant part: "(a) A person is guilty of larceny in the first degree when he commits larceny as defined in section 53a-119 and . . . (2) the value of the property or service exceeds ten thousand dollars . . . ."

[3] General Statutes § 53a-117 provides in relevant part: "(a) A person is guilty of criminal mischief in the third degree when, having no reasonable ground to believe that he has a right to do so, he: (1) Intentionally or recklessly (A) damages tangible property of another, or (B) tampers with tangible property of another and thereby causes such property to be placed in danger of damage . . . ."

(5) excluded the testimony of a witness regarding third party commission of the crimes charged, (6) instructed the jury and (7) considered and commented on inaccurate information at sentencing. We affirm the judgment of the trial court.[4]

The jury reasonably could have found the following facts. On May 22, 1991, the Middletown and Cromwell police departments responded to three residential burglaries. The first of these burglaries occurred in Middletown and the second in Cromwell. The third burglary, the subject of the charges in this case, occurred on Ledge Road in Cromwell. All of the burglaries occurred between the hours of noon and 1 p.m. on a sunny day.

At the scene of the first burglary, the front door of the house had been broken down and there was a fresh puddle of what appeared to be motor oil on the driveway. There was also a trail of oil that the police followed from the first crime scene to the second. The front door of the second burglarized house had been broken down and there was a fresh puddle of oil on the driveway. The police followed a trail of oil from the second crime

[4] We note that a violation of § 53a-117 is a Class B misdemeanor. The statute of limitations for the state to prosecute a defendant on a misdemeanor charge is one year. General Statutes § 54-193. The state, in the present case, did not prosecute the defendant on the misdemeanor charge within the requisite one year limitation period. The criminal act occurred on May 22, 1991, and the application for the arrest warrant of the defendant was not executed until January, 1996.

At first blush it might appear that we must reverse the defendant's conviction of criminal mischief in the third degree. That is not the case. The statute of limitations is not a jurisdictional bar to prosecution; it is an affirmative defense, which must be raised and can be waived. *State* v. *Littlejohn,* 199 Conn. 631, 639–40, 508 A.2d 1376 (1986); *State* v. *Coleman,* 48 Conn. App. 260, 269, 709 A.2d 590, cert. granted on other grounds, 245 Conn. 907, 718 A.2d 15 (1998).

After a thorough review of the file, transcripts and briefs, we conclude that the defendant never raised the statute of limitations as an affirmative defense to the charge of violating § 53a-117, criminal mischief in the third degree. Because the statute of limitations is not a jurisdictional defense to prosecution, we are barred from reviewing the claim on appeal.

scene to the third crime scene on Ledge Road in Cromwell. Here also, the front door had been broken down and a fresh puddle of oil was found on the driveway.

Detective Ronald Cornell of the Cromwell police department was called to investigate the Ledge Road burglary. When he arrived, he investigated the residence for signs of a burglary. He also dusted the front storm door for latent fingerprints. Cornell was able to lift two prints from the storm door, one from the inside and one from the outside of the aluminum frame. Cornell sent the fingerprints to the state forensic laboratory for identification. No further action was taken until 1995, when Connecticut obtained its automated fingerprint identification system. At that time, the fingerprint that was found on the outside of the storm door was identified as that of the defendant.

After the fingerprint had been identified, Cornell attempted to question the defendant about the burglary, but the defendant refused to talk to him. The police then obtained an arrest warrant for the defendant. The defendant was arrested and taken to the Cromwell police station, where he was advised of his *Miranda*[5] rights, which he waived. When Cornell informed the defendant that he was a suspect in the Ledge Road burglary, the defendant replied, "I've never been to Cromwell." After trial and conviction, this appeal followed. Additional facts will be set forth in the opinion as they become necessary.

I

The defendant first claims that the trial court improperly admitted evidence of a prior burglary committed by the defendant for the purpose of proving intent and motive. We conclude that the trial court properly admitted the prior misconduct evidence.

---

[5] *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

The state introduced evidence, through the testimony of Christine Kehayes, of a burglary committed in Orange on April 19, 1991. Kehayes lived in a raised ranch style house that was two houses from the corner of her street. Sometime between noon and 1 p.m. on that day, she was taking a bath when she heard a loud bang on her front door. Kehayes immediately got out of the tub and looked out the bedroom window. She noticed a car parked in the driveway, but did not recognize it.

Kehayes was getting dressed when she heard another loud bang. She ran down the stairs and confronted a man in her house. The intruder stated that he was looking for his friend and ran out through the back door, which had been broken in. Immediately after the man left her house, Kehayes called 911 and the police arrived shortly thereafter. Kehayes was unable to identify the man who broke into her house because she had seen only his back. She gave a general physical description of the man.

Sergeant Neil Hathaway of the Orange police department, one of the investigating officers, noticed stains of what appeared to be oil going from the driveway into the street. Hathaway dusted the back door for fingerprints and was able to lift a latent print. The defendant stipulated that the fingerprint was his. After the defendant had been arrested for the Ledge Road burglary, Cornell asked the defendant if he knew about the burglary in Orange. The defendant admitted that he had committed the Orange burglary and that he had been interrupted by a woman there.

The law in Connecticut on the admissibility of prior misconduct evidence is clear. Evidence of prior misconduct, because of its prejudicial nature, is inadmissible to show that the defendant is guilty of a subsequent crime. *State* v. *Holliday*, 159 Conn. 169, 172, 268 A.2d 368 (1970). "Evidence of other misconduct, however,

may be allowed for the purpose of proving many different things, such as intent, identity, malice, motive or a system of criminal activity . . . . Such evidence, however, to be admissible must also be relevant and material." (Citations omitted; internal quotation marks omitted.) *State* v. *Moore*, 49 Conn. App. 13, 21, 713 A.2d 859 (1998). "Uncharged misconduct evidence must satisfy a two part test in order to be admitted as an exception. The evidence must be relevant and material to at least one of the claimed exceptions, and its probative value must outweigh its prejudicial effect. *State* v. *Cooper*, 227 Conn. 417, 427, 630 A.2d 1043 (1993)." (Internal quotation marks omitted.) *State* v. *Moore*, supra, 22. "Because of the difficulties inherent in this balancing process, the trial court's decision will be reversed only where abuse of discretion is manifest or where an injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *O'Neill*, 200 Conn. 268, 274, 511 A.2d 321 (1986). Therefore, every reasonable presumption should be given to uphold the trial court's decision.

In the present case, the trial court held a hearing, out of the presence of the jury, in which it heard testimony as to conditions surrounding the Orange burglary. The trial court did not allow the state to offer evidence of the Orange burglary for the purpose of proving identity. The court specifically limited the scope of the evidence to proving only intent and motive.

"Because intent is almost always proved, if at all, by circumstantial evidence, prior misconduct evidence, where available, is often relied upon. See *State* v. *Tucker*, 181 Conn. 406, 415, 435 A.2d 986 (1980)." *State* v. *Baldwin*, 224 Conn. 347, 355, 618 A.2d 513 (1993). When a trial court determines whether it will allow prior misconduct evidence, it needs to examine the similarities between the prior conduct and the current crime. *State* v. *Henry*, 41 Conn. App. 169, 178, 674 A.2d

862 (1996); *State* v. *Carsetti*, 12 Conn. App. 375, 381, 530 A.2d 1095, cert. denied, 205 Conn. 809, 532 A.2d 77 (1987).

After hearing the similarities of the two burglaries, the trial court stated: "The court has painstakingly analyzed the offer and the burglary which is before the court—and I mean painstakingly. And the court is aware of numerous similarities between both crimes. Same time of the day, 12–1 p.m., both homes are raised ranches, one house is the second from the corner and the other is the third from the corner. Both were forced entry, no tools. In both situations the suspect parked the car in the driveway. The perpetrator was strong enough to bust through a door. Oil deposits were left in each driveway. Although there was some disparity in the testimony where one said reddish brown, possibly transmission oil, one said oil, there was never any offer to the court by anybody with any expertise, nor was there any sample taken, nor was any other [test] done, so I don't think—I think it's a similarity under the circumstances. The court also believes that a crime is committed in broad daylight in the middle of the day at a home demonstrates a certain bravado or boldness and is somewhat unusual. *And the court realizes it must consider not each and every one of these things in isolation but cumulatively* to determine whether it is sufficiently unique as to the issue of identity. And the court finds that both burglaries, these so-called similarities, either standing alone or together are not sufficiently unique to qualify as a signature crime. . . . However, the court is going to allow this testimony on the issue of intent and on the issue of motive for the alleged burglary of [Ledge Road] on May 22, 1991." (Emphasis added.)

The trial court then determined whether the evidence was relevant. "Next, the court has to consider whether or not the evidence is [relevant] or material to at least

one of the circumstances encompassed by the exception here, and I find that there [are] two. The court finds that it is relevant to the issue of intent and the issue of motive."

Finally, the court balanced the evidence's probative value against its prejudicial effect. The court stated, "Evidence is prejudicial when evidence tends to have an adverse affect upon a defendant beyond tending to prove the fact or issue that justifies [its] admission into evidence and there have been four categories of prejudice articulated by our Supreme Court and one is [where the evidence] unnecessarily [arouses] the [jury's] emotions, hostility or sympathy; two, may create distracting side issues; three, where evidence and counterproof will consume an inordinate amount of time; and four, where one party is unfairly surprised and unprepared to meet the evidence. The court finds that none of those areas exist here . . . . The exercise of wise discretion requires the trial court to consider whether other evidence equally probative and less prejudicial is here to the state . . . . [T]here appears that there is no other evidence available to the state. . . . I think it's a high degree of probative value. I see [no] prejudice to the defense for the admissibility of this evidence." It is true that the misconduct evidence introduced was remarkably similar both in kind and location to the evidence before the jury in this trial. "These factors, however, make the evidence that much more probative. *United States* v. *Jones*, 913 F.2d 1552, 1566 (11th Cir. 1990) (probative value of evidence heightened by similarity); *United States* v. *Dunbar*, 614 F.2d 39, 42 (5th Cir.), cert. denied, 447 U.S. 926, 100 S. Ct. 3022, 65 L. Ed. 2d 1120 (1980) (virtually identical evidence 'highly relevant' on intent issue)." *State* v. *Baldwin*, supra, 224 Conn. 355.

Additionally, the trial court protected the defendant from any undue prejudice by issuing a limiting instruc-

tion to the jury *before* Kehayes testified about the Orange burglary.[6] When the state called Hathaway, the trial court gave a similar limiting instruction to the jury.[7] Under these circumstances, we conclude that the trial court did not abuse its discretion and properly admitted evidence of the Orange burglary for the limited purpose of proving intent and motive.

## II

The defendant next claims that the trial court improperly admitted evidence of the defendant's postarrest statement to prove his consciousness of guilt. We disagree.

At trial, Cornell testified that the defendant, after voluntarily waiving his *Miranda* rights, agreed to talk to him. Cornell told the defendant that he was under arrest for committing a burglary in Cromwell. The defendant denied committing the crime and stated emphatically that he had never been in Cromwell. The defendant made this statement even though his fingerprint had been found at the scene of the Ledge Road burglary and he had not denied that it was his fingerprint.

The defendant offered evidence that the area of Cromwell where the burglary occurred was less than

---

[6] In his reply brief, the defendant claims that the limiting instruction was insufficient to negate the prejudicial effect of the testimony concerning the Orange burglary. The defendant's claim is without merit.

The trial court instructed: "I just want you to be aware that the testimony that I believe she is going to give is admitted for a limited purpose and that is limited only to the intent and motive of the alleged burglary of [Ledge Road] in Cromwell. You are expressly prohibited from using this evidence that I'm anticipating right now, as evidence of the tendency to commit criminal acts of the defendant. [Your] use, if you chose to use it, is strictly limited to the intent of the alleged perpetrator and the motive of the alleged perpetrator on May [22], 1991, at [Ledge Road]."

[7] "The testimony is only being offered for you to consider—if you find it credible. That's your call—on the issue of the intent of the perpetrator on May 22, 1991, in Cromwell and the motive of the perpetrator on May 22, 1991, on [Ledge Road] in Cromwell."

one mile from the Berlin town line and, because there was no sign indicating the town line, it was reasonable to infer that the defendant could have entered Cromwell without having known that he had done so.

A trial court may admit "[e]vidence that an accused has taken some kind of evasive action to avoid detection for a crime, such as flight, concealment of evidence, or a false statement, [which] is ordinarily the basis for a charge on the inference of consciousness of guilt." *State* v. *Oliveras*, 210 Conn. 751, 759, 557 A.2d 534 (1989). The trial court, however, should admit only that evidence where its probative value outweighs its prejudicial effect. *State* v. *Maturo*, 188 Conn. 591, 597–98, 452 A.2d 642 (1982). "In seeking to introduce evidence of a defendant's consciousness of guilt, '[i]t is relevant to show the conduct of an accused [e.g., refusing to talk to the police prior to being arrested], as well as *any* statement made by him subsequent to an alleged criminal act, which may be inferred to have been influenced by the criminal act.' " (Emphasis in original.) *State* v. *Adams*, 36 Conn. App. 473, 481, 651 A.2d 747 (1994), appeal dismissed, 235 Conn. 473, 667 A.2d 796 (1995).

The defendant argues that, because there was evidence presented that suggests that he did not knowingly lie to the police, his statement to the effect that he had never been in Cromwell is not admissible as consciousness of guilt. The defendant further argues that because there existed an equally reasonable explanation for his statement, it was insufficient to bolster the state's fingerprint evidence and, therefore, was highly prejudicial. We disagree.

The defendant applies the wrong standard. As we stated in *Adams*, "Once the evidence is admitted, if it is sufficient for a jury to infer from it that the defendant had a consciousness of guilt, it is proper for the court to instruct the jury as to how it can use that evidence.

It is then for the jury to consider any ambiguity . . . ." Id. Prior to his arrest, the defendant had refused to talk to the police about the Ledge Road burglary. When Cornell informed the defendant, after placing him under arrest, that he was under arrest for the Ledge Road burglary, the defendant emphatically stated that he had never been in Cromwell. Given these facts, the jury reasonably could have inferred that the defendant's statement was an attempt to deceive the police. The trial court did not abuse its discretion in admitting the postarrest statement of the defendant.

## III

The defendant's third argument is that the trial court improperly admitted evidence of his prearrest silence. We are not bound to hear a claim unless it was raised in the trial court. Practice Book § 60-5. Our review of the record and transcripts fails to disclose any instance where the defendant objected to the state's offer of his prearrest silence.

The defendant does not argue that the admission of the evidence of his prearrest silence violated any of his constitutional rights. See *Jenkins* v. *Anderson*, 447 U.S. 231, 100 S. Ct. 2124, 65 L. Ed. 2d 86 (1980) (prosecutorial use of defendant's prearrest silence does not violate defendant's right to fair trial). Because no constitutional right is involved, we decline to review the defendant's claim under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).

## IV

The defendant's fourth claim is that the evidence was insufficient to support a judgment of conviction. We disagree.

When reviewing a sufficiency of the evidence claim, we apply a two part test. "First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so

construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . *State* v. *James*, 237 Conn. 390, 435, 678 A.2d 1338 (1996). In this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct." (Internal quotation marks omitted.) *State* v. *Crespo*, 246 Conn. 665, 670, 718 A.2d 925 (1998), cert. denied, 525 U.S. 1125, 119 S. Ct. 911, 142 L. Ed. 2d 909 (1999); see also *State* v. *Sivri*, 231 Conn. 115, 126, 646 A.2d 169 (1994). "Our inquiry into whether the evidence in the record would support a finding of guilt beyond a reasonable doubt does not require us to ask if we believe that the evidence established guilt beyond a reasonable doubt, but rather if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original; internal quotation marks omitted.) *State* v. *Crump*, 43 Conn. App. 252, 256, 683 A.2d 402, cert. denied, 239 Conn. 941, 684 A.2d 712 (1996).

The state presented evidence that the defendant's fingerprint was found on the outside of the front storm door at the Ledge Road house. The defendant did not dispute that it was his fingerprint. Michael Supple, a fingerprint examiner at the state forensic laboratory, testified that weather conditions could affect the quality and longevity of a latent print.[8] Supple also testified that a fingerprint found on the inside of a storm door, not exposed to the weather, would last longer than one found on the outside of an aluminum storm door that was exposed to the weather, which being 98 percent

---

[8] The defendant argues in his reply brief that Supple's testimony does not meet the standards set forth in *Daubert* v. *Merrell Dow Pharmaceuticals*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). The defendant did not object to Supple's testimony at trial, and extensively cross-examined Supple about the basis of his opinions regarding the effects of weather on fingerprints. We, therefore, will not discuss that argument further.

water would evaporate. Supple further testified that he believed a warm, sunny day would speed up the evaporation process.

On cross-examination, Supple stated, however, that there was no scientific method by which to determine the age of a fingerprint or what exact weather conditions would cause a fingerprint to disappear. Supple indicated that he had never studied the effects of weather on a fingerprint, but it was his opinion that a fingerprint exposed to the weather would disappear more quickly than one that was protected from the elements.

Gary Lesser, a meteorologist, testified as to the weather in Middletown, which adjoins Cromwell, for the months of March, April and May, 1991. The average temperature during that period was above average, and May 22, 1991, was a sunny day.

When asked on cross-examination if the meteorological readings were necessarily identical to the conditions in Cromwell, Lesser admitted that the conditions would not necessarily be the same. He also admitted that it could be raining at one address in Cromwell, and not be raining at another.

The victim's house is located on a dead-end street. The victim testified that the defendant had never been a guest at the house and had no reason to be there. The victim also testified that the storm door was used by the family as the primary entrance to the house. Additionally, the victim's son testified that the storm door was exposed to the elements. Except for the two fingerprints found on the storm door, no other fingerprints were found. The state argues that those facts create enough circumstantial evidence to allow the jury reasonably to infer that the defendant placed his fingerprint on the storm door at the time of the Ledge Road burglary. We agree.

The defendant argues that there was not enough direct evidence to show that the defendant placed the fingerprint on the storm door at the time of the burglary; therefore, the state did not prove beyond a reasonable doubt that the fingerprint was placed on the door at the time of the burglary. The defendant applies the wrong standard. "We . . . note that while it is necessary that the jury find that each element of the crime be proven beyond a reasonable doubt, it is not necessary that each of the basic and inferred facts underlying these conclusions be proven beyond a reasonable doubt." *State* v. *Cintron*, 39 Conn. App. 110, 120, 665 A.2d 95 (1995).

In addition to the fingerprint evidence, the jury had before it substantial circumstantial evidence: the defendant's prearrest silence, the defendant's postarrest statement and the prior misconduct evidence to prove intent and motive. "[I]t is the cumulative impact of a multitude of facts that establishes guilt in a case involving substantial circumstantial evidence." Id. We conclude that the evidence was sufficient for a jury to find beyond a reasonable doubt that the defendant committed the Ledge Road burglary.

V

The defendant's next claim is that the trial court improperly excluded the testimony of Hugh Doney as to third party commission of the crime charged. We conclude that the trial court properly excluded the hearsay evidence.

The defendant offered evidence that Steven Aylward had told Doney that Aylward had committed the Ledge Road burglary. The trial court held a hearing outside the presence of the jury to determine the admissibility of the statements. Doney testified that he and Aylward committed several burglaries across the state in 1991. Doney stated that Aylward and he were arrested in New

York around Memorial Day, 1991, for a burglary that they had committed.

Doney testified that Aylward would break in the front doors of the houses that they burglarized. He further testified that Aylward and he "did a few down off the Berlin Turnpike," but that he did not know the exact towns. Doney and Aylward took their stolen goods to New York to buy drugs.

Doney stated that Aylward also committed burglaries on his own or with Aylward's wife. Doney testified that Aylward discussed his other burglaries with him. Doney stated that he felt that Aylward was candid with him and that "it's kind of just a feeling that I had because we were both heroin addicts and there's no reason for him to lie about the burglaries . . . ." The defendant attempted to enter a statement that Aylward made to Doney in the end of May, 1991, regarding a burglary that Aylward allegedly had committed at that time at a police officer's house. The victim in the present case is a police officer.

The state objected to this proffered statement on hearsay grounds. The defendant claimed that it fell into the residual exception to the hearsay rule. The trial court sustained the objection. We agree that the trial court properly excluded the statement.

"Hearsay is an out-of-court statement that is offered to establish the truth of the facts contained in the statement." (Internal quotation marks omitted.) *State* v. *Williams*, 48 Conn. App. 361, 367, 709 A.2d 43, cert. denied, 245 Conn. 907, 718 A.2d 16 (1998). Hearsay is admissible if it comes within one of the many recognized exceptions to the hearsay rule.

Our Supreme Court established the test for whether evidence is admissible under the residual exception to the hearsay rule in *State* v. *Sharpe*, 195 Conn. 651, 664,

491 A.2d 345 (1985). To be admissible under the residual exception (1) there must be a reasonable necessity for the statement's admission and (2) the statement must be supported by the "equivalent guarantees of reliability and trustworthiness essential to other evidence admitted under the traditional hearsay exceptions." Id. "[T]he necessity requirement is met when, unless the hearsay statement is admitted, the facts it contains may be lost, either because the declarant is dead or *otherwise unavailable*, or because the assertion is of such a nature that evidence of the same value cannot be obtained from the same or other sources." (Emphasis added.) Id., 665.

Our Supreme Court adopted the definition of unavailability found in rule 804 (a) of the Federal Rules of Evidence.[9] *State* v. *Bryant*, 202 Conn. 676, 694, 523 A.2d 451 (1987) (specifically adopting rule 804 (a) (1)); *State* v. *Munoz*, 233 Conn. 106, 140, 659 A.2d 683 (1995) (implicitly adopting rule 804 [a] [1] through [5]).

We first examine whether the proffered statement was necessary. The defendant was attempting to show that a third party had committed the Ledge Road burglary. An admission by a third party that he, rather than the defendant, had committed the burglary would certainly be important to the defendant's defense. We note, however, that the proffered statement was that of a witness who testified, not only at the pretrial hearing, but at trial as well. The defendant argues that this factor is not sufficient to exclude the testimony. We disagree.

[9] Rule 804 of the Federal Rules of Evidence provides in relevant part: "(a) Definition of unavailability. 'Unavailability of a witness' includes situations in which the declarant . . . (2) persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so; or (3) testifies to a lack of memory of the subject matter of the declarant's statement; or (4) is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity . . . ."

The declarant was *clearly available and able to testify*. The defendant, therefore, could have attempted to acquire the evidence from the declarant himself. Our Supreme Court has implied that the unavailability of the declarant and the ability of the party to secure the information from other sources should be considered conjointly. See *State* v. *Hines*, 243 Conn. 796, 810, 709 A.2d 522 (1998) (unavailability of witness coupled with fact that only he could offer requested testimony satisfies necessity requirement). Accordingly, the defendant did not meet the required showing of necessity to admit the statement under the residual exception to the hearsay rule.

Even if we were to decide that the proffered statement meets the necessity requirement, we find that the trial court properly addressed the issue of the statement's trustworthiness. Doney admitted that Aylward and he were heroin addicts, driving to New York on an almost daily basis to satisfy their habits. The trial court addressed the statement's trustworthiness as follows: "[W]ith all due respect sir, these are two [burglars] riding back and forth daily from New York to sell jewelry  .  .  .  . They're heroin addicts and you want me to put in what he said—I'm not putting any of these burglaries on this gentleman's integrity, but you tell me that that's got sufficient reliability and trustworthiness as does the sanctity of an oath, and that is what the exceptions to the hearsay rule are.  .  .  .

"I don't think it has the particularized guarantees of trustworthiness that we have to have and of course be satisfied with it before something is put into evidence and goes before the jury.  .  .  . I'm not satisfied that it rises to the level of particularized guarantees of trustworthiness."

The trial judge was in a position to assess the witness' credibility and demeanor and is vested with the discretion to determine if a third party statement is trustworthy. See *State* v. *Jones*, 46 Conn. App. 640, 647, 700 A.2d

710, cert. denied, 243 Conn. 941, 704 A.2d 797 (1997). The trial court did not abuse its discretion as evidentiary gatekeeper.

The defendant also argues that Aylward's statement should have been admitted as a declaration against penal interest. Connecticut has adopted the requirement of the Federal Rules of Evidence for the admission of statements against penal interest that the declarant be unavailable. *State* v. *Bryant*, supra, 202 Conn. 692–94. The defendant argues that the declarant, when called to testify at the pretrial hearing, denied having committed a crime to which he pleaded guilty. The mere fact that the declarant pleaded guilty to a crime, but states that he did not commit that crime, does not make him unavailable. After a thorough review of the transcripts, we conclude that Aylward was not being evasive as to his answers and was not claiming his fifth amendment privilege, nor was he testifying to a lack of memory. The trial court did not abuse its discretion in excluding Doney's hearsay evidence under both the residual exception and the statement against penal interest exception to the hearsay rule.

## VI

The defendant's sixth claim is that the trial court improperly instructed the jury regarding (1) the fingerprint evidence, (2) consciousness of guilt, (3) Aylward's nolo contendere plea, (4) Aylward's prior convictions and (5) identity. We conclude that the trial court's instructions were proper.

The standard of review of jury instructions is well settled. "A charge to the jury is not to be critically dissected nor are individual instructions to be judged in artificial isolation from the overall charge. . . . *State* v. *Taylor*, 196 Conn. 225, 231, 492 A.2d 155 (1985). In reviewing a challenge to jury instructions, we must examine the charge in its entirety. . . . While the instructions need not be exhaustive, perfect or techni-

cally accurate, they must be correct in law, adapted to the issues and sufficient for the guidance of the jury. . . . The court is under no duty at any time to charge in the exact language requested. . . . Failure to charge precisely as proposed by a [party] is not error where the point is fairly covered in the charge." (Internal quotation marks omitted.) *State* v. *Otto*, 50 Conn. App. 1, 10, 717 A.2d 775, cert. denied, 247 Conn. 927, 719 A.2d 1171 (1998).

A

The defendant argues that the trial court should have instructed the jury that (1) the object touched by the defendant must have been relatively inaccessible to the defendant and (2) where fingerprint evidence is the only or principal evidence, it cannot sustain a conviction. We disagree.

The trial court instructed the jury that "[a] conviction may not stand on fingerprint evidence alone unless the prints were found under such circumstances that they could have been made only at the time the crime was committed, which is what the state claims it has proven in this case. Therefore, if you conclude that the state has shown the defendant has left his fingerprint on an incriminating object, in this case the exterior of the storm door, and that the only reasonable explanation for the presence of that print is that the defendant placed it there when he entered the house committing the crimes charged and that the other elements of the crime charged had been proven to you, then you must find the defendant guilty." The trial court had previously instructed the jury to consider whether the Ledge Road house was accessible to the defendant. When we review the instruction in its entirety, we conclude that the defendant's first claim has no merit.

The defendant's reliance on *State* v. *Lytell*, 206 Conn. 657, 663, 539 A.2d 133 (1988), for the proposition that

where fingerprint evidence is the sole or principal evidence, that evidence alone cannot sustain a conviction is misplaced. While the defendant's proposition of law is correct, the facts in the present case do not present that issue. The jury had before it substantial circumstantial evidence from which it could have reasonably inferred that the defendant was the person who committed the crimes. We conclude that the trial court properly instructed the jury on the issue of fingerprint evidence.

B

The defendant next claims that the trial court's instruction regarding consciousness of guilt evidence was incomplete. The defendant sought to have the trial court add to its charge language to the effect that if the jury found that the defendant's statement was not made to avoid detection but, rather, was due to a lack of knowledge or mistake, the jury could not consider it as consciousness of guilt. We do not agree.

Our Supreme Court has stated that a consciousness of guilt instruction "may be given when a party has made material misstatements because such fabrication or falsification implies that that party believes his or her case to be weak or unfounded." *State* v. *Banks*, 194 Conn. 617, 621, 484 A.2d 444 (1984). The postarrest statement was in evidence. "[I]f it is sufficient for a jury to infer from it that the defendant had a consciousness of guilt, it is proper for the court to instruct the jury as to how it can use that evidence." *State* v. *Adams*, supra, 36 Conn. App. 481.

The defendant's conclusion that the charge was incomplete is incorrect. The trial court, earlier in its instructions, cautioned the jury that it was to take into consideration whether any contradictions in the evidence were the result of an intentional misstatement or merely an "innocent lapse of memory."

Reviewing the charge as a whole, the trial court instructed the jury on the substance of the defendant's request. The trial court correctly instructed the jury.

## C

The defendant's third claim is that the trial court improperly failed to instruct the jury that Aylward's nolo contendere plea had the same effect as a guilty plea, thus suggesting that the jury had to find independently that Aylward had committed the crime to which he plead nolo contendere. The defendant argues that the trial court impermissibly placed the burden of proof on the defendant. We are not persuaded.

When Aylward testified, the trial court instructed the jury that a nolo contendere plea, followed by a finding of guilty, was equivalent to a conviction, although a nolo contendere plea was not the same as an admission. The trial court did not instruct the jury in its final instructions that a plea of nolo contendere was equivalent to a conviction. This omission, however, did not shift the burden of proof to the defendant. At the beginning of its instructions, the trial court reminded the jury that it was to follow its previous limiting instructions. Furthermore, the trial court, at numerous times, instructed the jury that the state always had the burden of proof on every element of the crime. We conclude that the instruction did not cause the jury to believe that the defendant had the burden of proof.

## D

The defendant claims that "the [trial] court refused to instruct the jury that the other burglary convictions of Mr. Aylward could have been used to evaluate [his] credibility . . . ." The defendant is incorrect. The trial court specifically stated, "One of the witnesses presented to you, Steven Aylward, admitted to you that he was convicted of multiple burglaries. And this testi-

mony *is admissible on the question of the credibility of Mr. Aylward. That is the weight that you will give his testimony.*" (Emphasis added.) The defendant's claim is without merit.

### E

The defendant claims that the trial court's instruction improperly suggested that the identity of the perpetrator had been established. This claim is without merit.

The trial court stated that "[i]dentification of the defendant is a question of fact for you to decide, taking into consideration all of the information presented to you in the course of the trial. The state has the burden of proving beyond a reasonable doubt that the defendant was the perpetrator of each crime with which he was charged . . . . The identification of the defendant may not stand on fingerprint evidence alone unless the prints were found under such circumstances that they could have been impressed only at the time the crime was committed."

The defendant argues that the instruction on the elements of the crimes charged improperly suggests the identity of the defendant had been established. The language that the defendant claims is improper came after the trial court delivered its instruction regarding the state's burden of proof as to the defendant's identity. The fact that the trial court told the jury that "the state must prove beyond a reasonable doubt that the defendant knowingly and unlawfully entered the premises" does not suggest that the court believed that the defendant's identity had been proven. The trial court's instruction was proper.

### VII

The defendant's final claim is that the trial court made improper comments at the sentencing hearing. Because

we conclude that the defendant waived this issue, we decline to review it.

Our review of the transcript indicates that the defendant failed to object to the trial court's comments regarding Aylward's lifestyle.[10] The defendant does not claim *Golding* review, nor does he claim plain error. We therefore decline to review it.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[10] The defendant also claimed that the state's argument at the sentencing hearing regarding the amount of damages at the Middletown burglary was improper. The defendant fails to put forth a claim for *Golding* review and fails to claim plain error and, therefore, we decline to review that claim.