## STATE OF CONNECTICUT *v.* ERIC HAM
### (AC 18127)

O'Connell, C. J., and Landau and Shea, Js.

Argued March 2—officially released October 12, 1999

*William S. Palmieri*, with whom, on the brief, was *John R. Williams*, for the appellant (defendant).

*Rita M. Shair*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *John Waddock*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SHEA, J. The defendant, Eric Ham, appeals from the judgment of conviction, rendered after a jury trial, of conspiracy to commit larceny in the third degree in violation of General Statutes §§ 53a-48 (a)[1] and 53a-124 (a) (1), larceny in the third degree in violation of § 53a-124 (a) (1), conspiracy to commit murder in violation of General Statutes §§ 53a-48 and 53a-54a (a),[2] murder in violation of § 53a-54a (a), assault in the first degree

---

[1] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[2] General Statutes § 53a-54a (a) provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person . . . ."

in violation of General Statutes § 53a-59[3] and falsely reporting an incident in violation of General Statutes § 53a-180 (a) (3) (A).[4] The defendant claims that (1) except for the larceny charges, there was insufficient evidence to establish his guilt beyond a reasonable doubt with respect to the other crimes, (2) he was denied his right to confront his accusers and (3) the trial court gave incorrect jury instructions concerning proof beyond a reasonable doubt and consciousness of guilt. We affirm the judgment of the trial court.

From the evidence, the jury reasonably could have found that in March, 1993, the defendant, accompanied by four masked men, approached Alex Santana and asked him where to find his cousin, George Flores. When Santana replied that he had not seen Flores, the defendant punched Santana in the face, causing him to be thrown against a store window. The owner of the store came outside and the defendant and his companions departed.

On May 5, 1993, at approximately 11 p.m., the defendant agreed to pay Ronaldo Rivera $40 if he would steal

[3] General Statutes § 53a-59 (a) provides: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument; or (2) with intent to disfigure another person seriously and permanently, or to destroy, amputate or disable permanently a member or organ of his body, he causes such injury to such person or to a third person; or (3) under circumstances evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person; or (4) with intent to cause serious physical injury to another person and while aided by two or more other persons actually present, he causes such injury to such person or to a third person . . . ."

[4] General Statutes § 53a-180 (a) provides in relevant part: "A person is guilty of falsely reporting an incident when, knowing the information reported, conveyed or circulated to be false or baseless, he . . . (3) gratuitously reports to a law enforcement officer or agency (A) the alleged occurrence of an offense or incident which did not in fact occur . . . ."

a large, fast, four door automobile and deliver it to the defendant. Rivera found such a vehicle on Frank Street in New Haven and, with the help of a friend, stole a four door Buick and brought the car to the defendant and another man on Ward Street at approximately 2 a.m.

Santana had been riding that night in the car of his friend, Butch Console, with three other persons, Marilyn Torres, Melissa Dawson and Dimiris Vega. When the car stopped on Button Street, the occupants got out. As they were standing by the car, a man approached and offered to paint Console's initials on the driver's door. Console agreed and then stood next to a red station wagon parked on the opposite side of the street. Meanwhile, his friends stood on the street side of Console's car watching the man paint. Console noticed a car approaching slowly on Button Street. He saw what he first thought were firecrackers coming from the rear seat of the car. When he realized it was gunfire, Console ran around the front of the station wagon to the sidewalk and knelt to avoid the bullets. The approaching car was the stolen Buick and contained the defendant and three companions. Gunfire erupted from the area of the rear seat of the Buick. One bullet hit Santana in the stomach, resulting in his hospitalization. Another bullet struck Torres in the back, causing her death. The evidence indicated that at least five shots were fired from close range.

A few minutes later, the defendant and his companions crashed the Buick on Howard Avenue and abandoned it with the motor running, the rear door open, a bullet casing on the floor behind the driver's seat, and a sheet covering the rear seat wet with blood. The rear window had been blown out. A second shell was found on the roof of the car, and a third was found on Button Street at the shooting scene. The defendant went to the Hospital of St. Raphael (hospital) at 2:49 a.m. to seek treatment for a gunshot wound. He spoke with a

New Haven police officer at 3:05 a.m. He gave a statement to Sergeant Diane Langston declaring that he and his friend had been accosted and shot on the street in an attempted robbery by two masked men. The defendant stated that he and his friend then ran directly to the hospital.

A ballistics expert testified that the bullet obtained from Torres' body matched the .45 caliber shell casing found on the floor of the Buick. The other casings found on the roof of the Buick and on Button Street came from a nine millimeter gun. A fingerprint expert identified fingerprints found on the interior of the driver's door as those of the defendant. Experts from the state forensic laboratory testified that the blood on the sheet covering the backseat was consistent with the defendant's blood type.

The jury convicted the defendant as charged on all counts. This appeal followed. Additional facts will be set forth where necessary to a resolution of the issues on appeal.

I

The defendant first claims that the evidence presented was insufficient to support the jury's verdict. Specifically, the defendant claims that the evidence presented proves nothing more than that he was in the Buick with three companions when the shots were fired that injured Santana and killed Torres.[5] We disagree.

"In reviewing a sufficiency claim, we apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and

---

[5] In his brief, the defendant acknowledges, however, that there was sufficient evidence from which the jury reasonably could have convicted him of larceny in the third degree and conspiracy to commit larceny in the third degree.

the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . *State* v. *Traficonda*, 223 Conn. 273, 278, 612 A.2d 45 (1992)." (Internal quotation marks omitted.) *State* v. *Greenfield*, 228 Conn. 62, 76, 634 A.2d 879 (1993). In the present case, we agree that the defendant's mere presence in the car with his companions would not, by itself, prove that he was a party to a conspiracy or that he was involved in the crimes that occurred. The evidence indicates, however, that the defendant's involvement went far beyond a mere presence at the scene of the crimes. More than one month before the crimes, the defendant punched Santana in the face when he failed to disclose the whereabouts of his cousin in response to the defendant's inquiry. That incident provides a basis to infer hostility toward Santana on the part of the defendant.

Additionally, on the night of the crimes, it was the defendant who paid Rivera to steal the car used in the shooting. The defendant's fingerprints were found on the interior of the car door on the driver's side. Moreover, the blood on the sheet covering the backseat of the Buick matched the defendant's blood type, indicating that he was sitting there during the shooting and either wounded himself or was injured by a companion when the shots were fired from the backseat. The defendant visited the hospital within one-half hour of the shooting to seek treatment for a gunshot wound to his arm. While he claimed that he had been injured during an attempted robbery by two masked men, that explanation never was corroborated by other evidence. Indeed, an investigation of the alleged location of the reported attempted robbery uncovered no shell casings, blood drops or other physical evidence to support the defendant's account of the attempted robbery.

Finally, when Rivera's testimony about being hired by the defendant to steal the car that was used in the shooting is considered along with the subsequent events that occurred that night, the requirement of an overt act in furtherance of the conspiracy is satisfied. General Statutes § 53a-48.[6] Thus, after reviewing the evidence presented at trial and construing it in the light most favorable to sustaining the conviction, we conclude that there was sufficient evidence from which the jury reasonably could have convicted the defendant on all the charges beyond a reasonable doubt.

## II

The defendant next claims that he was denied the right to confront his accusers. This claim, despite its constitutional implications, is based on the admission into evidence of hospital records relating to the defendant's visit to the hospital for treatment of the gunshot wound that he claimed to have received in the attempted robbery.

The following additional facts are necessary for our resolution of this claim. The hospital records indicated that the defendant was admitted at 2:49 a.m. on the morning of the crimes. Sergeant Langston had previously testified that she had taken a statement from the defendant at the hospital shortly after 2:05 a.m. Because the state claimed that the shooting occurred at 2:20 a.m., Langston's testimony would have provided the defendant with an alibi if it were correct. The state called Langston to testify once again after the introduction of the hospital records. It also introduced into evidence, over the defendant's objection, two previously undisclosed statements by Langston, both of which indicated that she had not been dispatched to the hospital until 2:48 a.m. She testified that her earlier testimony was a result of "human error."

---

[6] See footnote 1.

The defendant's only objection at trial to the admission of the hospital records was that, because this was a criminal case, the court should exercise its discretion and require the custodian of the records at the hospital to testify and be available for cross-examination. The trial court overruled the objection and admitted the records pursuant to General Statutes § 4-104,[7] which allows hospital records, "if not otherwise inadmissible," to be admitted into evidence without any preliminary testimony when there is attached thereto a certification in affidavit form of the person in charge of the hospital record room or his assistant. The defendant does not claim that the requirements of § 4-104 for admission of the records were not satisfied.

On appeal the defendant claims that the admission of the hospital records without supporting testimony violated his "right to be confronted with the witnesses against him," as provided by the sixth amendment to our federal constitution.[8] In advancing this claim,[9] he

[7] General Statutes § 4-104 provides in relevant part: "Any and all parts of any [record or copy produced in connection with any proceeding in any court], if not otherwise inadmissible, shall be admitted in evidence without any preliminary testimony, if there is attached thereto the certification in affidavit form of the person in charge of the record room of the hospital or his authorized assistant indicating that such record or copy is the original record or a copy thereof, made in the regular course of the business of the hospital, and that it was the regular course of such business to make such record at the time of the transactions, occurrences or events recorded therein or within a reasonable time thereafter. . . ."

[8] The sixth amendment to the United States constitution, made applicable to the states through the fourteenth amendment, provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him . . . ."

[9] Although the defendant's failure to articulate this claim in the trial court ordinarily would preclude appellate review, it qualifies for appellate review of an unpreserved claim pursuant to State v. Golding, 213 Conn. 233, 238–40, 567 A.2d 823 (1989). Under Golding, "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to

relies on *Ohio* v. *Roberts*, 448 U.S. 56, 65, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980), in which that provision was construed to require the prosecution, before introducing prior testimony from a court proceeding in which the defendant was a party, to "either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant." In *United States* v. *Inadi*, 475 U.S. 387, 394, 106 S. Ct. 1121, 89 L. Ed. 2d 390 (1986), however, *Roberts* was viewed as applying the unavailability requirement only to prior testimony. "*Roberts* cannot fairly be read to stand for the radical proposition that no out-of-court statement can be introduced by the government without a showing that the declarant is unavailable." Id. In this case particularly, where the only purpose for introducing the hospital records was to explain the basis for Langston's correction of her previous testimony concerning the time of the defendant's hospital visit, it would make no sense to require the state to produce the person who made the entries in the records showing the time of that visit. We conclude, therefore, that the hospital records were properly admitted into evidence.

### III

The defendant's final claims are that the trial court improperly instructed the jury concerning (1) proof beyond a reasonable doubt and (2) consciousness of guilt. We conclude that neither claim is meritorious.

### A

The defendant claims that the trial court's instructions to the jury concerning the requirement of proof

harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." Id., 239–40. Although we conclude that there was no constitutional violation because the trial court's ruling was based on § 4-104, the constitutionality of which is not challenged by the defendant, that determination cannot be made without reviewing the claim.

of guilt beyond a reasonable doubt incorrectly diluted that standard by including the following sentence: "A reasonable doubt means this, it is a doubt for which a reasonable man or woman can give a valid reason." The defendant excepted to that portion of the charge, thus preserving his right to appellate review. Practice Book § 42-16, formerly § 852; *State* v. *Ali*, 233 Conn. 403, 421, 660 A.2d 337 (1995).

The defendant relies mainly on the dissenting opinion of then Chief Judge Jon O. Newman in *Chalmers* v. *Mitchell*, 73 F.3d 1262, 1274–76 (2d Cir. 1996), in which a similar instruction was criticized as implying that a juror must be able to articulate a good reason to fellow jurors for entertaining a reasonable doubt.[10] The majority opinion, although it disapproved that instruction and acknowledged that it "might mislead the jury," held that in the context of the entire charge, it was not reasonably likely that the jurors misunderstood the proper burden of proof. Id., 1268. Moreover, the *Chalmers* court stated that while such an instruction was " 'not approved' and 'perhaps unwise,' [we] have never held such [an instruction] to be reversible error." Id.

In *State* v. *Morant*, 242 Conn. 666, 688, 701 A.2d 1 (1997), our Supreme Court approved a "valid reason" instruction identical to that challenged by the defendant in this case. The court cited the following cases that upheld the same or similar instructions: *State* v. *Kelley*, 229 Conn. 557, 567, 643 A.2d 854 (1994); *State* v. *Adams*, 225 Conn. 270, 290–91, 623 A.2d 42 (1993); *State* v. *Derrico*, 181 Conn. 151, 170–71, 434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980). *State* v. *Morant*, supra, 688. This court is obliged to follow precedent established by our Supreme Court

---

[10] The defendant in *Chalmers* challenged the portion of the trial court's instructions stating that a reasonable doubt was " 'a doubt for which some good reason can be given.' " *Chalmers* v. *Mitchell*, supra, 73 F.3d 1266.

in the absence of controlling federal authority. Accordingly, we conclude that there is no merit in the defendant's challenge to the trial court's instruction on reasonable doubt.

## B

The defendant claims that the trial court's charge on consciousness of guilt was "unwarranted by the evidence and highly misleading." Such a claim is inconsistent with the failure of the defendant to take any exception to that part of the charge at trial.

The following additional facts are necessary for the resolution of this claim. The trial court instructed the jury that it was proper to consider evidence of the defendant's conduct and any declarations he made after the crimes occurred that may have been fairly influenced by the alleged criminal offenses. The court instructed the jury: "If a defendant should make false statements with respect to himself or as to his whereabouts at the time of some particular event, these may be shown because such conduct or such statements often tend to show a guilty connection by the accused with the crime charged." The trial court then referred to the statements made by the defendant to Langston at the hospital: "Now, if you find that the accused . . . lied to Sergeant Langston as to his activities, his whereabouts and how he received the gunshot wound to his arm during the early morning hours of May 6, 1993, then you may properly infer that these statements were borne of a guilty mind and that they tend to show a guilty connection by the defendant with the crimes."

Evidence that an accused has made false statements tending to exculpate him from involvement in the crimes charged has commonly been deemed to support a jury charge on consciousness of guilt. "[A] party's falsehood or other fraud in the preparation and presentation of his cause . . . his fabrication or suppression

of evidence . . . and all similar conduct is receivable against him as an indication of his consciousness that his case is a weak or unfounded one; and from that consciousness may be inferred the fact itself of the cause's lack of truth and merit." 2 J. Wigmore, Evidence (Chadbourn Rev. 1979) § 278, p. 133. Indeed, our Supreme Court has stated that such a charge " 'may be given when a party has made material misstatements because such fabrication or falsification implies that that party believes his or her case to be weak or unfounded.' *State* v. *Banks*, 194 Conn. 617, 621, 484 A.2d 444 (1984)." *State* v. *Middlebrook*, 51 Conn. App. 711, 730, 725 A.2d 351, cert. denied, 248 Conn. 910, 731 A.2d 310 (1999).

The defendant, having failed to except to the charge on consciousness of guilt, seeks appellate review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), maintaining that the court's instruction involved the violation of a fundamental right to a properly instructed jury and, therefore, is of constitutional magnitude. In *State* v. *Smith*, 219 Conn. 160, 166, 592 A.2d 382 (1991), however, a similar claim involving an instruction on consciousness of guilt was held to be "evidentiary rather than constitutional in significance" and, therefore, did not qualify for review pursuant to *Golding*. "While we have recognized that a claim challenging an instruction that mandates a particular inference adverse to a defendant may sufficiently implicate constitutional rights to satisfy the second condition of *State* v. *Golding*, supra [239–40] . . . we cannot agree that the instruction challenged here suffers from such a defect. The instruction merely identified a permissive inference that the jury might draw from the defendant's false statement, an item of circumstantial evidence." (Citations omitted.) *State* v. *Smith*, supra, 165.

In the case before us, the challenged instruction stated that if the jury found the accused had lied to

Langston about how he received his gunshot wound, "you may properly infer that these statements were borne of a guilty mind and that they tend to show a guilty connection by the defendant with the crime." As in *State* v. *Smith*, supra, 219 Conn. 165, the instruction given here "merely identified a permissive inference that the jury might draw from the defendant's false statement, an item of circumstantial evidence." We conclude, therefore, that the defendant is not entitled to further review of the challenged instruction because the deficiency claimed did not violate any constitutional right; id., 166; and he failed to preserve his right to appellate review by excepting to that portion of the charge as required by Practice Book § 42-16. *State* v. *Ali*, supra, 233 Conn. 421.

The judgment is affirmed.

In this opinion the other judges concurred.