STATE OF CONNECTICUT *v.* GARY BELL
(AC 21374)

Mihalakos, Flynn and Stoughton, Js.

Argued December 11, 2001—officially released March 19, 2002

*Moira L. Buckley*, deputy assistant public defender, for the appellant (defendant).

*C. Robert Satti, Jr.*, senior assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Matthew C. Couloute, Jr.*, former assistant state's attorney, for the appellee (state).

*Opinion*

STOUGHTON, J. The defendant, Gary Bell, appeals from the judgment of conviction, rendered after a jury trial, of attempt to commit murder in violation of General Statutes §§ 53a-49 and 53a-54a (a), assault in the first degree in violation of General Statutes § 53a-59 (a) (5), conspiracy to commit murder in violation of General Statutes §§ 53a-48 and 53a-54a (a), and reckless endangerment in the first degree in violation of General Statutes § 53a-63 (a). On appeal, the defendant claims that the trial court improperly denied his motion for a judgment of acquittal because the state failed to present sufficient evidence to support his conviction of attempt to commit murder and conspiracy to commit murder.[1] We affirm the judgment of the trial court.

---

[1] The defendant also claims that (1) the trial court improperly accepted a legally inconsistent jury verdict in violation of his state and federal due process rights to be acquitted unless proven guilty of each element of the charged offense beyond a reasonable doubt and (2) the prosecutor engaged in misconduct during his summation, thereby violating his constitutional right to a fair trial. Pursuant to a letter dated December 3, 2001, the defendant's counsel notified this court that the defendant would pursue only the sufficiency of evidence claims. The defendant's counsel reiterated that decision at oral argument. Accordingly, the defendant's additional claims are deemed abandoned.

The jury reasonably could have found the following facts. For a number of years, the defendant, the codefendant Glenn Jones[2] and the victim, Edward Beltran, all had been selling drugs on the corner of Harral Avenue and James Street in Bridgeport. Sometime before July 17, 1998, Beltran was involved in a dispute with a drug seller who worked for Jones. Jones subsequently learned of the dispute. At around midnight on July 17, 1998, Beltran drove to Gonzalez's Grocery with his former girlfriend, Paula Cifaldi, to purchase some items. The store is located at the corner of Harral Avenue and James Street. Beltran parked in front of the store on James Street, exited his car and entered the store after briefly talking with one or more persons who were standing outside. Cifaldi, who remained in the car, recognized Jones, who was standing with a group of people in front of the store. After Beltran entered the store, Cifaldi overheard Jones say to an unidentified person: "All these n——s, they ain't gonna play me no more, they can't come around and do this to me no more, watch, you all see, you all see." At some point, Beltran came out to the car to check if Cifaldi was all right and then reentered the store. Sometime thereafter, the defendant and Jones entered the store.

While Beltran was talking with a store employee, Jones stood behind Beltran and made a hissing sound. When Beltran turned to look at Jones, he shook his head and walked away. At that time, the defendant was at the back of the store. Beltran continued talking with the store employee unconcerned by Jones' conduct, but

[2] The defendant and Jones were tried in a joint trial. Jones was convicted of attempt to commit murder in violation of §§ 53a-49 and 53a-54a (a), assault in the first degree in violation of § 53a-59 (a) (5), conspiracy to commit murder in violation of §§ 53a-48 and 53a-54a (a), reckless endangerment in the first degree in violation of § 53a-63 (a), criminal possession of a firearm in violation of General Statutes § 53a-217 and carrying a pistol without a permit in violation of General Statutes § 29-35 (a). Jones has filed a separate appeal.

when he looked out the door and saw the defendant and Jones standing together in front of the store, he felt uneasy.

As Beltran left the store to return to his car, the defendant and Jones blocked the front door of the store. Beltran walked around them without incident, but as he opened the driver's side door of the car, the defendant and Jones, who were now standing on the sidewalk in front of the store, fired handguns[3] at the car, shattering the front windshield. Beltran ducked down beside the car and told Cifaldi to get down. He then called out that he had been hit in the hope that the defendant and Jones would stop firing. A period of silence followed, during which Beltran again attempted to get into the car, and Cifaldi started to get up, thinking that the shooting had ended. The defendant and Jones began firing again, and Beltran crouched down and moved to the back of the car on the driver's side. The defendant then jumped out into the middle of the street and fired at Beltran as he tried to hide behind the car. The defendant shot Beltran five times, causing him to suffer wounds to his abdomen, right buttock, right thigh, right flank and left elbow.

After they stopped firing the second time, the defendant and Jones fled the scene, running with guns in their hands down James Street toward Harral Avenue. Beltran managed to get into the car and drive to a nearby police station. At the station, he got out of the car and collapsed onto the ground. Soon thereafter, he was taken to a hospital, where he was treated for his gunshot wounds. The defendant and Jones were subsequently arrested and charged in connection with the shooting.[4]

---

[3] Beltran testified that one of the guns was a "Glock," which is a semi-automatic pistol manufactured by Glock, Inc. The state presented ballistics evidence that indicated that a Glock gun may have been used in the shooting.

[4] Jones and the defendant were charged both as principals and accessories in each of the charges. "To be found guilty of accessorial liability under

After a jury trial, the defendant was convicted of attempt to commit murder, assault in the first degree, conspiracy to commit murder and reckless endangerment in the first degree. Prior to sentencing, Jones filed a motion for a judgment of acquittal and a motion for a new trial. The defendant joined in those motions. The court denied both motions and sentenced the defendant to a total effective term of imprisonment of twenty years, execution suspended after five years, with five years probation. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court improperly denied his motion for a judgment of acquittal because the state failed to present sufficient evidence to support his conviction of attempt to commit murder. Specifically, he argues that the state presented insufficient evidence to prove beyond a reasonable doubt that he intended to cause the death of Beltran. We disagree.

"In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Burton*, 258 Conn. 153, 175, 778 A.2d 955 (2001).

"The question on appeal is not whether we believe that the evidence established guilt beyond a reasonable

[General Statutes] § 53a-8, this statute requires proof of a dual intent: that the accessory have the intent to *aid* the principal *and* that in so aiding he intend to *commit* the offense with which he is charged." (Emphasis in original; internal quotation marks omitted.) *State* v. *Ortiz*, 47 Conn. App. 333, 345, 705 A.2d 554 (1997), cert. denied, 244 Conn. 902, 710 A.2d 175 (1998).

doubt, but rather whether, after viewing the evidence in the light most favorable to sustaining the judgment, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . . While the jury may not speculate to reach a conclusion of guilt, [it] may draw reasonable, logical inferences from the facts proven to reach a verdict. . . . Deference is given to the trier of fact who had the opportunity to observe the conduct, demeanor and attitude of the trial witnesses and to assess their credibility. . . . Where there is sufficient evidence to support a reasonable inference that the defendant intended to commit the crime charged, whether such an inference should be drawn is properly a question for the jury to decide. . . .

"In evaluating evidence, the [jury] is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Internal quotation marks omitted.) *State* v. *Conde*, 67 Conn. App. 474, 483, 787 A.2d 571 (2001), cert. denied, 259 Conn. 927, 793 A.2d 251 (2002).

"While the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt." (Citation omitted.) *State* v. *Pinnock*, 220 Conn. 765, 771, 601 A.2d 521 (1992).

"The test for determining whether the evidence is sufficient to sustain a verdict is thus whether the [jury] could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Jefferson*, 67 Conn. App. 249, 256, 786 A.2d 1189 (2001), cert. denied, 259 Conn. 918, 791 A.2d 566 (2002).

To convict the defendant of attempt to commit murder, the jury had to find beyond a reasonable doubt that he acted with the specific intent to cause Beltran's death. See General Statutes §§ 53a-49, 53a-54a and 53a-3 (11). "Because direct evidence of the accused's state of mind is rarely available, intent is generally proven by circumstantial evidence. Therefore, intent is often inferred from conduct, as well as from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom. . . . For example, [i]ntent to cause death may be inferred from the type of weapon used, the manner in which it was used, the type of wound inflicted and the events leading to and immediately following the death." (Citation omitted; internal quotation marks omitted.) *State* v. *Murray*, 254 Conn. 472, 479–80, 757 A.2d 578 (2000).

In the present case, the state presented evidence from which the jury reasonably could have found that the defendant intended to cause Beltran's death. Specifically, the state presented evidence that for a number of years, the defendant, Jones and Beltran all had been selling drugs in the area where the shooting occurred. About two weeks before the shooting, Beltran was involved in a dispute with a drug seller who worked for Jones.[5] On the night that he was shot, Beltran saw

---

[5] Beltran testified that, prior to this incident, there had been additional drug related disputes between himself and both the defendant and Jones.

the defendant and Jones at Gonzalez's Grocery while he was purchasing some items at the store. As Beltran left the store to return to his car, the defendant and Jones blocked the front door of the store. As Beltran proceeded to his car and opened the driver's side door, the defendant and Jones fired a fusillade of bullets at the car, shattering the front windshield. The state presented ballistics evidence that indicated that a semi-automatic pistol and a revolver were used in the shooting.

Beltran then called out that he had been hit in the hope that the defendant and Jones would stop firing. After a period of silence, the defendant and Jones began firing again from about a car distance away. Beltran crouched down and moved to the back of the car on the driver's side. The defendant then jumped out into the middle of the street and fired shots directly at Beltran as he tried to hide behind the car. The defendant shot Beltran five times, causing him to suffer wounds to his abdomen, right buttock, right thigh, right flank and left elbow. The treating surgeon testified that Beltran "was lucky because . . . the bullets missed the vital organs." After they stopped firing the second time, the defendant and Jones fled the scene without attempting to aid or summon medical assistance for Beltran.

We conclude that the jury reasonably could have inferred from the cumulative effect of all the circumstantial evidence that the defendant fired at Beltran with the intent to cause his death. Therefore, the evidence presented at trial, construed in the light most favorable to sustaining the verdict, was sufficient to support the jury's determination that the defendant intended to cause Beltran's death. See *State* v. *Delgado*, 247 Conn. 616, 623–24, 725 A.2d 306 (1999). Accordingly, the defendant's claim that the state failed to present sufficient

evidence to support his conviction of attempt to commit murder is without merit.

## II

The defendant also claims that the court improperly denied his motion for a judgment of acquittal because the state failed to present sufficient evidence to support his conviction of conspiracy to commit murder. Specifically, he argues that the state presented insufficient evidence to prove beyond a reasonable doubt that he and Jones agreed to cause the death of Beltran. We disagree.

We reiterate briefly our standard of review of a sufficiency of the evidence claim. "We first construe the evidence most favorably to upholding the defendant's conviction, then ask whether a jury, upon the facts so construed and the reasonable inferences that follow, could have found the elements of conspiracy to commit murder proven beyond a reasonable doubt. . . . In conducting our review, we are mindful that the finding of facts, the gauging of witness credibility and the choosing among competing inferences are functions within the exclusive province of the jury, and, therefore, we must afford those determinations great deference." (Citation omitted.) *State* v. *Conde*, supra, 67 Conn. App. 490.

"To establish the crime of conspiracy under § 53a-48 . . . it must be shown that an agreement was made between two or more persons to engage in conduct constituting a crime and that the agreement was followed by an overt act in furtherance of the conspiracy by any one of the conspirators. The state must also show intent on the part of the accused that conduct constituting a crime be performed. . . . Further, the prosecution must show both that the conspirators intended to agree and that they intended to commit the elements of the underlying offense." (Internal quotation

marks omitted.) *State* v. *Booth*, 250 Conn. 611, 657–58, 737 A.2d 404 (1999), cert. denied sub nom. *Brown* v. *Connecticut*, 529 U.S. 1060, 120 S. Ct. 1568, 146 L. Ed. 2d 471 (2000).

"To prove the offense of conspiracy to commit murder, the state must prove two distinct elements of intent: that the conspirators intended to agree; and that they intended to cause the death of another person." *State* v. *Pinnock*, supra, 220 Conn. 771. "Intent is generally proven by circumstantial evidence because direct evidence of the accused's state of mind is rarely available. . . . [I]ntent is often inferred from conduct . . . and from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom." (Citations omitted; internal quotation marks omitted.) *State* v. *Henry*, 253 Conn. 354, 367, 752 A.2d 40 (2000). "In a conspiracy prosecution, when determining both a defendant's specific intent to agree and his specific intent that the criminal acts be performed, the jury may rely on reasonable inferences from facts in the evidence and may develop a chain of inferences, each link of which may depend for its validity on the validity of the prior link in the chain." (Internal quotation marks omitted.) *State* v. *Bond*, 49 Conn. App. 183, 196, 713 A.2d 906, cert. denied, 247 Conn. 915, 722 A.2d 808 (1998).

"While the state must prove an agreement [to commit murder], the existence of a formal agreement between the conspirators need not be proved because [i]t is only in rare instances that conspiracy may be established by proof of an express agreement to unite to accomplish an unlawful purpose. . . . [T]he requisite agreement or confederation may be inferred from proof of the separate acts of the individuals accused as coconspirators and from the circumstances surrounding the commission of these acts. . . . Further, [c]onspiracy can seldom be proved by direct evidence. It may be inferred from the activities of the accused persons." (Internal

quotation marks omitted.) *State* v. *Torres*, 242 Conn. 485, 491–92, 698 A.2d 898 (1997).

In the present case, the state presented evidence from which the jury reasonably could have found that the defendant and Jones agreed to cause the death of Beltran. Specifically, the state presented evidence that for a number of years the defendant, Jones and Beltran all had been selling drugs in the area where the shooting occurred. About two weeks before the shooting, Beltran was involved in a dispute with a drug seller who worked for Jones. Beltran testified that, prior to that incident, there had been additional drug related disputes between himself and both the defendant and Jones.

On the night he was shot, Beltran saw the defendant and Jones together at Gonzalez's Grocery while he was purchasing some items at the store. A short time before the defendant and Jones shot Beltran, Beltran's former girlfriend overheard Jones say to an unidentified person: "All these n-----s, they ain't gonna play me no more, they can't come around and do this to me no more, watch, you all see, you all see." Sometime thereafter, Jones and the defendant entered the store.

While Beltran was talking with a store employee, Jones stood behind Beltran and made a hissing sound. When Beltran turned to look at Jones, he shook his head and walked away. At that time, the defendant was at the back of the store. As Beltran left the store to return to his car, the defendant and Jones blocked the front door of the store. As Beltran proceeded to his car and opened the driver's side door, the defendant and Jones fired a fusillade of bullets at the car, shattering the front windshield. Beltran then called out that he had been hit in the hope that the defendant and Jones would stop firing. After a period of silence, the defendant and Jones began firing again from about a car distance away. Beltran crouched down and moved to

the back of the car on the driver's side. The defendant then jumped out into the middle of the street and fired shots directly at Beltran as he tried to hide behind the car, hitting him repeatedly. After they stopped firing the second time, the defendant and Jones fled the scene together.

From those facts, the jury reasonably could have inferred that the defendant and Jones agreed to cause the death of Beltran. Although the parties presented two different scenarios of the incident, the jury chose to accept the state's version and to reject the defendant's. "In such cases, we defer to the jury's assessment of credibility." *State* v. *Barber*, 64 Conn. App. 659, 666, 781 A.2d 464, cert. denied, 258 Conn. 925, 783 A.2d 1030 (2001). "On issues where the evidence allows room for reasonable differences of opinion among fair-minded people, if the conclusion of the jury is one that reasonably could have been reached, it must stand even though the trial court might have reached a different result. . . . A verdict should not be set aside . . . where it is apparent that there was some evidence on which the jury might reasonably have reached its conclusion." (Internal quotation marks omitted.) *Weiss* v. *Bergen*, 63 Conn. App. 810, 813–14, 779 A.2d 195, cert. denied, 258 Conn. 908, 782 A.2d 1254 (2001).

After carefully reviewing the record, we conclude that the evidence adduced at trial, construed in the light most favorable to sustaining the verdict, was sufficient to support the jury's determination that the defendant and Jones intended to agree to cause Beltran's death. Accordingly, the defendant's claim that the state failed to present sufficient evidence to support his conviction of conspiracy to commit murder is without merit, and, therefore, the trial court properly denied the defendant's motion for a judgment of acquittal.

The judgment is affirmed.

In this opinion the other judges concurred.