STATE OF CONNECTICUT *v.* KENNETH RISER
(AC 20914)

Foti, Dranginis and McDonald, Js.

Argued March 19—officially released June 25, 2002

*William B. Westcott,* special public defender, for the appellant (defendant).

*Paul J. Narducci,* assistant state's attorney, with whom, on the brief, was *Kevin T. Kane,* state's attorney, for the appellee (state).

*Opinion*

MCDONALD, J. The defendant, Kenneth Riser, appeals from the judgment of conviction, rendered after a jury trial, of possession of a narcotic substance with the intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b).[1] On appeal, the defendant claims that the trial court improperly (1) admitted into evidence the address that he had provided to the department of correction on a theory of consciousness of guilt and (2) held that the state presented sufficient evidence to prove beyond a reasonable doubt that he possessed the narcotics. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. At 3:30 p.m. on April 13, 1999, members of the Norwich police department and the Connecticut statewide narcotics task force executed a search warrant at the Mohegan Village Apartments, 90 North Street, apartment 4k, in Norwich. The apartment was on the second floor and consisted of two bedrooms, a bathroom, living room and kitchen.

Upon entering the apartment, the police found Allen Page sleeping in one of the bedrooms. The department

[1] General Statutes § 21a-278 (b) provides in relevant part: "Any person who . . . sells . . . to another person any narcotic substance . . . other than marijuana, amphetamine-type substance, or one kilogram or more of a cannabis-type substance except as authorized in this chapter, and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years . . . . The execution of the mandatory minimum sentence imposed by the provisions of this subsection shall not be suspended . . . ."

of mental health had helped Page and Tom Edwards, who was not present, find the apartment in which they lived. Page had been declared disabled and had a conservator. At trial, Page testified that the defendant had been staying at his apartment for about one month prior to the search. In Page's bedroom closet, the police seized a black duffel bag belonging to the defendant, containing clothing, $1532 in cash and a broken car antenna that they recognized as a "crack pipe" used to smoke cocaine. Approximately fifteen minutes into the search, the defendant entered the apartment. Later, in the living room, the police found a clear plastic bag containing fourteen individually wrapped pieces of crack cocaine underneath a stereo. The crack cocaine was packaged in a manner consistent with the sale of cocaine, in which the defendant was engaged at the apartment.

The defendant was found guilty of possession of a narcotic substance with the intent to sell by a person who is not drug-dependent, and this appeal followed. Additional facts will be set forth as necessary.

I

The defendant claims that the trial court improperly admitted evidence of the address that he had given to the department of correction on a theory of consciousness of guilt. The defendant contends that the court should not have permitted the state to introduce evidence that he gave one address to the department of correction and another address to the Norwich police at the time of his arrest because there was no evidence that he gave a different address to the Norwich police. In addition to seeking review under our evidentiary error standard, the defendant also seeks review under the plain error doctrine.

The following evidence was presented at trial. Upon being arrested, the defendant was transported to the

Norwich police station. As part of the "booking," or intake process, Detective John A. John completed a "long form," which contained personal information that he received from the defendant, including his address. The form that John completed after the defendant's arrest was introduced into evidence as a business record through John, without objection by the defendant. That form listed the defendant's address as "352 Boswell Avenue, apartment #3, Norwich."

After a hearing, the court permitted the state to introduce evidence that the defendant provided John with a nonexistent address and that he gave a different address to the department of correction. The state then called Officer Paul Onofrio, the booking officer at Corrigan-Radgowski Correctional Institution in Uncasville. As a booking officer, it was Onofrio's responsibility to gather a prisoner's background information upon intake and then to compare that information with the information that the prisoner provides upon release to ensure that the correct individual is released. Onofrio testified that the defendant gave "438A Lexington in Brooklyn, New York," as his address when he came to the facility. Following Onofrio's testimony, the court instructed the jury that Onofrio's testimony was to be considered only to show consciousness of guilt.[2]

---

[2] The court's instruction provided: "Ladies and gentlemen, in any criminal trial it is permissible for the state to show that the conduct or statements allegedly made by the defendant after the time of the alleged offense may fairly have been influenced by the alleged criminal act. That is, that the conduct or statements might show a consciousness of guilt. I instruct you that the testimony that you just heard from department of correction officer Onofrio as to the address given him by the defendant or allegedly given him by the defendant is being admitted here only with respect to the issue of whether or not that statement might tend to show a consciousness of guilt. You are to consider that evidence for no other purpose. And you are to consider it only with respect to the issue in this trial of whether or not you find that it tends to show a consciousness of guilt. It is up to you as the judges of the facts to decide—one second—whether or not the statement or conduct of the defendant reflects consciousness of guilt. And ultimately to consider such in your deliberations in conformity with the limited instruction I have just given you and also in conformity with the instructions that

The state also called Officer William Nash of the Norwich police department. Nash testified that he attempted to locate 352 Boswell Avenue, apartment 3, the address that the defendant had given to John. Nash further testified that the address did not exist.

## A

"Generally, [t]rial courts have wide discretion with regard to evidentiary issues and their rulings will be reversed only if there has been an abuse of discretion or a manifest injustice appears to have occurred. . . . Every reasonable presumption will be made in favor of upholding the trial court's ruling, and it will be overturned only for a manifest abuse of discretion." (Internal quotation marks omitted.) *State* v. *O'Neil*, 67 Conn. App. 827, 831, 789 A.2d 531 (2002).

"A trial court may admit [e]vidence that an accused has taken some kind of evasive action to avoid detection

---

I will give you at the time this trial concludes."

In charging the jury on the concept of consciousness of guilt, the court stated: "In any criminal trial, it is permissible for the state to attempt to show the conduct of the defendant after the alleged offense is influenced by the criminal act. That is, that if the conduct shows a consciousness of guilt. The conduct of a person allegedly giving the police a false address when arrested may be considered in determining guilt since it may possibly show a consciousness of guilt. Such an action is a circumstance, which, when considered with all the facts, may justify an inference of—about the accused guilt.

"Such a fact, however, even if proved, is not conclusive of guilt. It is circumstantial evidence, and you may or may not infer consciousness of guilt from it. It is to be given the weight to which you think it is entitled under all the circumstances shown.

"Keep in mind, there can be other reasons for the alleged conduct. That such conduct does not necessarily reflect feelings of guilt and that feelings of guilt, which are sometimes present in innocent people, do not necessarily reflect actual guilt.

"Accordingly, giving a false address to the police is not sufficient in and of itself to establish guilt. It is up to you as judges of the facts to decide whether or not, based on the totality of the circumstances, the conduct of the—the alleged conduct of the defendant reflects consciousness of guilt, assuming you first find the defendant engaged in the alleged conduct."

for a crime, such as flight, concealment of evidence, or a *false statement,* [which] is ordinarily the basis for a charge on the inference of consciousness of guilt. . . . The trial court, however, should admit only that evidence where its probative value outweighs its prejudicial effect. . . . In seeking to introduce evidence of a defendant's consciousness of guilt, [i]t is relevant to show the conduct of an accused . . . *as well as any statement made by him* subsequent to an alleged criminal act, which may be inferred to have been influenced by the criminal act." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Middlebrook,* 51 Conn. App. 711, 720, 725 A.2d 351, cert. denied, 248 Conn. 910, 731 A.2d 310 (1999). "[M]isstatements of an accused, which a jury could reasonably conclude were made in an attempt to avoid detection of a crime or responsibility for a crime or were influenced by the commission of the criminal act, are admissible as evidence reflecting a consciousness of guilt." (Internal quotation marks omitted.) *State* v. *Moody,* 214 Conn. 616, 626, 573 A.2d 716 (1990).

"[A]ll that is required is that the evidence have relevance, and the fact that ambiguities or explanations may exist that tend to rebut an inference of guilt does not render evidence of concealment inadmissible but simply constitutes a factor for the jury's consideration." *State* v. *Williams,* 27 Conn. App. 654, 663–64, 610 A.2d 672, cert. denied, 223 Conn. 914, 614 A.2d 829 (1992). "A misstatement of a suspect to police officers is admissible against him in a later prosecution because it permits the jury to draw the reasonable inference that the misstatement was made in an attempt to avoid detection for the crime." *State* v. *DeMatteo,* 186 Conn. 696, 702, 443 A.2d 915 (1982). "The assumption of a false name and address obviously constitutes consciousness of guilt evidence." *State* v. *Bell,* 188 Conn. 406, 412, 450 A.2d 356 (1982).

The defendant argues that there was no evidence before the jury indicating that he had given John the 352 Boswell Avenue address. He claims that the only evidence before the jury that listed his address as 352 Boswell Avenue in Norwich was the "long form" prepared by John. Consequently, he argues, there was no basis for a consciousness of guilt instruction because there was no attempt by the defendant to conceal his involvement in any criminal activity. It is the defendant's claim that "[a] business record [the long form prepared by John] maintained by a public agency cannot fairly be deemed conduct or a statement of the accused." We reject this argument.

John testified that the "long form" is prepared in the ordinary course of business, that the form was prepared in the ordinary course of police business and that the form was prepared "at or about the time" he gathered the information. The jury also heard that John had received the information, including the address, on the "long form" from the defendant in response to John's questions. Further, the defendant did not object when the form was introduced into evidence. As a result, the jury had before it a statement, which it could have found was given by the defendant, that he resided at "352 Boswell Avenue, apartment #3, Norwich."

In this case, the defendant's statement as to his address was relevant. By concealing his Mohegan Village address, it could be inferred that the defendant was seeking to conceal his involvement with the crack cocaine found there. The "long form" intake sheet constituted evidence from which the jury could have inferred a consciousness of guilt. "Once the evidence is admitted, if it is sufficient for a jury to infer from it that the defendant had a consciousness of guilt, it is proper for the court to instruct the jury as to how it can use that evidence. It is then for the jury to consider any ambiguity . . . ." (Internal quotation marks omit-

ted.) *State* v. *Middlebrook*, supra, 51 Conn. App. 720–21. Accordingly, the trial court did not abuse its discretion in admitting the testimony of Onofrio and Nash and, subsequently, in charging the jury as to consciousness of guilt.

B

The defendant also seeks review of the court's decision to admit the testimony of Onofrio and Nash under the plain error doctrine. "Pursuant to Practice Book § 60-5, this court may reverse or modify the decision of the trial court if it determines that the factual findings are clearly erroneous in view of the evidence and pleadings in the whole record, or that the decision is otherwise erroneous in law. . . . The court may in the interests of justice notice plain error . . . ." (Internal quotation marks omitted.) *State* v. *Hair*, 68 Conn. App. 695, 704–705, 792 A.2d 179, cert. denied, 260 Conn. 925, 797 A.2d 522 (2002). "[T]o prevail under the plain error doctrine, the defendant must demonstrate that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice. . . . This doctrine is not implicated and review of the claimed error is not undertaken unless the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) Id., 705. As we concluded earlier in this opinion, the court did not improperly admit the testimony of Onofrio and Nash. Consequently, plain error review is not warranted in this case.

II

The defendant next claims that the trial court improperly held that the state presented sufficient evidence to prove beyond a reasonable doubt that he possessed narcotics with the intent to sell. We disagree.

"In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"The question on appeal is not whether we believe that the evidence established guilt beyond a reasonable doubt, but rather whether, after viewing the evidence in the light most favorable to sustaining the judgment, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . . While the jury may not speculate to reach a conclusion of guilt, [it] may draw reasonable, logical inferences from the facts proven to reach a verdict. . . . Deference is given to the trier of fact who had the opportunity to observe the conduct, demeanor and attitude of the trial witnesses and to assess their credibility. . . .

"In evaluating evidence, the [jury] is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty. . . .

"The test for determining whether the evidence is sufficient to sustain a verdict is thus whether the [jury] could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt." (Citations omitted; internal quotation marks

omitted.) *State* v. *Bell*, 68 Conn. App. 660, 664–66, 792 A.2d 891, cert. denied, 260 Conn. 921, 797 A.2d 518 (2002).

"We note that the probative force of the evidence is not diminished because it consists, in whole or in part, of circumstantial evidence rather than direct evidence. . . . It has been repeatedly stated that there is no legal distinction between direct and circumstantial evidence so far as probative force is concerned. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Internal quotation marks omitted.) *State* v. *Jefferson*, 67 Conn. App. 249, 255, 786 A.2d 1189 (2001), cert. denied, 259 Conn. 918, 791 A.2d 566 (2002).

The defendant claims that the state failed to prove beyond a reasonable doubt that he possessed the dealer's package of crack cocaine that was found in the common area of the apartment. It is the defendant's contention that "there was no evidence presented to link the defendant to the specific narcotics discovered in the living room other than his mere presence in the apartment at the time the narcotics were discovered."

"In order to prove illegal possession of a narcotic substance, it is necessary to establish that the defendant knew the character of the substance, knew of its presence and exercised dominion and control over it. . . . Where, as here, the [crack cocaine] was not found on the defendant's person, the state must proceed on the theory of constructive possession, that is, possession without direct physical contact. . . . One factor that may be considered in determining whether a defendant is in constructive possession of narcotics is whether he is in possession of the premises where the narcotics are found. . . . Where the defendant is not in exclusive possession of the premises where the narcotics are found, it may not be inferred that [the defendant] knew

of the presence of the narcotics and had control over them, unless there are other incriminating statements or circumstances tending to buttress such an inference." (Citations omitted; internal quotation marks omitted.) *State* v. *Berger*, 249 Conn. 218, 225, 733 A.2d 156 (1999).

As the defendant correctly notes, "[t]o mitigate the possibility that innocent persons might be prosecuted for such possessory offenses and to assure that proof exists beyond a reasonable doubt, it is essential that the state's evidence include more than just a temporal and spatial nexus between the defendant and the contraband." *State* v. *Brunori*, 22 Conn. App. 431, 436–37, 578 A.2d 139, cert. denied, 216 Conn. 814, 580 A.2d 61 (1990). In this case, we conclude a sufficient factual nexus was shown to connect the defendant to the crack cocaine.

The jury heard the testimony of Detective Christopher Ladd, who had seized a black duffel bag from Page's bedroom closet containing clothing, $1532 and a broken car antenna. Ladd testified that it was "common practice for people who smoke crack to snap off a car antenna, break off a portion and use that to smoke crack." When questioned at the police station, the defendant admitted to the police that the black duffel bag belonged to him.

The jury had before it the "long form" completed by John. In addition to containing a false address, the defendant stated on the form that he was unemployed. Although unemployed, the defendant admitted to ownership of the more that $1500 that was found in the apartment.

The state also presented the testimony of Page. Page, who knew the defendant by the name "Steve Brooks," testified that he did not know the defendant until the defendant appeared at his apartment unannounced and asked to stay there. The defendant, when arrested, was found in possession of a fishing license under the name

"Steve Brooks." Page testified that, in exchange for being permitted to stay at the apartment, the defendant provided Page with two pieces of crack cocaine "almost every day." Page further testified that during the period of time that the defendant was staying at the apartment, numerous individuals came to visit the defendant for short periods of time. When the individuals arrived, they would go into Page's bedroom with the defendant, where the duffel bag containing the cash and the converted crack pipe was located. In addition, Page testified that he had seen the defendant in the vicinity of the stereo, where the police found the packaged crack cocaine. Finally, Page denied that the crack cocaine belonged to him or that he was selling the crack cocaine that was found in the apartment.

The jury also heard the testimony of Sergeant Jeffrey Hotsky, the commanding officer for the eastern division of the statewide narcotics task force. Hotsky testified that the manner in which the crack cocaine found underneath the stereo was packaged was "consistent with that of drug trafficking, with sales." Hotsky further testified that typically, there are two places where drug dealing occurs: Street level dealing and residential apartment dealing. In describing how a residential apartment drug dealing operation is set up, Hotsky stated: "Frequently, you will find that a drug trafficker would utilize someone else's residence and, going along with that, they will also only stay there for short periods of time. They will be sporadic as far as their dealing out of that residence. They probably will not stay there for hours and hours. Stay, leave, come back."

From this evidence, the jury could have concluded that the defendant moved into Page's apartment to sell drugs and in fact did so, using the packaged narcotics found in the apartment and keeping the proceeds of the sales in his duffel bag. It could have further concluded that, as a part of his drug operation, the defen-

dant paid for the use of Page's apartment by giving Page crack cocaine on an almost daily basis.

"It is well settled that in reviewing a defendant's challenge to a verdict based on insufficient evidence, we defer to the jury. . . . We do not sit as a [seventh] juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record. We have not had the jury's opportunity to observe the conduct, demeanor, and attitude of the witnesses and to gauge their credibility." (Citation omitted; internal quotation marks omitted.) *State* v. *Young*, 56 Conn. App. 831, 835, 746 A.2d 795, cert. denied, 253 Conn. 904, 753 A.2d 939 (2000). "[T]he evaluation of [a witness'] testimony and credibility are wholly within the province of the trier of fact. . . . [I]t is the trier's exclusive province to weigh the conflicting evidence, determine the credibility of witnesses and determine whether to accept some, all or none of a witness' testimony." (Citation omitted; internal quotation marks omitted.) *Hoffer* v. *Swan Lake Assn., Inc.*, 66 Conn. App. 858, 861, 786 A.2d 436 (2001). "The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Internal quotation marks omitted.) *State* v. *Berger*, supra, 249 Conn. 224. Construing the evidence and the reasonable inferences drawn therefrom in the light most favorable to sustaining the verdict, as we must, there was sufficient evidence to support the jury's decision. We conclude, therefore, that the evidence was capable of supporting a conclusion that the defendant was engaged in selling the crack cocaine found in the apartment's living room.

The judgment is affirmed.

In this opinion the other judges concurred.