# STATE OF CONNECTICUT *v.* ALLAN NICHOLSON
## (AC 22834)

Foti, Dranginis and Healey, Js.

Argued May 28—officially released August 20, 2002

*Daniel J. Krisch*, special public defender, with whom were *Michael S. Taylor* and, on the brief, *Trenton C. Haas*, legal intern, for the appellant (defendant).

*John A. East III*, assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Eva B. Lenczewski*, assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Allan Nicholson, appeals from the judgment of conviction, rendered after a jury trial, of robbery in the first degree in violation of General Statutes § 53a-134 (a) (3)[1] and of being a persistent serious felony offender in violation of General Statutes (Rev. to 1999) § 53a-40 (b).[2] On appeal, the defendant

---

[1] General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he . . . (3) uses or threatens the use of a dangerous instrument . . . ."

[2] General Statutes (Rev. to 1999) § 53a-40 (b) provides in relevant part: "A persistent serious felony offender is a person who (1) stands convicted of a felony, and (2) has been, prior to the commission of the present felony, convicted of and imprisoned under an imposed term of more than one year or of death, in this state or in any other state or in a federal correctional institution, for a crime. . . ."

claims that (1) the evidence was insufficient to sustain his conviction, beyond a reasonable doubt, of robbery in the first degree, (2) the trial court abused its discretion when it permitted the state to amend the second part of the information charging him as a persistent serious felony offender and (3) he was deprived of his constitutional right to a speedy trial. On the basis of our resolution of the defendant's first claim, we reverse the judgment of the trial court in part, but affirm the judgment in all other respects.

The jury reasonably could have found the following relevant facts. Prior to the events underlying this appeal, the defendant was convicted of a felony, namely, robbery in the first degree. Upon his release from prison, the defendant supplemented his income from lawful employment by selling illegal drugs. On February 17, 1999, at about 4:30 p.m., the defendant, after drinking a quantity of vodka, entered a Kentucky Fried Chicken restaurant located in Waterbury. Upon entering, the defendant walked directly across the restaurant. He passed through a doorway that separated the kitchen area from the rest of the restaurant and entered the kitchen work area behind the cash registers. In doing so, he passed by Margaret Powell, the cashier working at the counter, and several customers.

The defendant approached Barry Southworth, an assistant manager, who was working behind the counter. With his left hand, the defendant grabbed Southworth's left arm and positioned himself so that his face was close to Southworth's. The defendant stated, "[O]pen the drawer, give me the money or I'm going to hurt you real bad." The defendant kept his right hand in the pocket of his sweatshirt, causing his pocket to protrude outward. By doing so, the defendant gave Southworth the impression that he may have possessed a knife, gun or other weapon in his pocket.

Southworth opened the cash register and removed some of the money contained therein totaling less than one hundred dollars. The defendant grabbed the money with his left hand and stuck it into his sweatshirt pocket. The defendant then calmly exited the restaurant. In addition to Southworth and Powell, Angela Williams, another assistant restaurant manager, who had been working in a rear office, witnessed all or part of the incident by means of video cameras that relayed images to a monitor in her office. None of these witnesses ever observed a weapon in the defendant's possession.

After the defendant left the restaurant, Powell called the Waterbury police department to report the incident. Upon leaving the restaurant, the defendant went to the department of children and families (department) building, which is located about 100 yards from the restaurant. Williams and an acquaintance, who had been in the restaurant at that time, followed the defendant. Williams called to the defendant and told him, "Give me back my money." The defendant did not respond to Williams; he continued to run away from the restaurant. Williams observed the defendant enter the department building and converse with a woman therein. Shortly thereafter, Williams flagged down police officers who responded to the crime scene. On the basis of Williams' identification, officers apprehended the defendant as he exited the department building. Upon taking the defendant into custody, officers discovered that he had a razor knife or box cutter in his right sweatshirt pocket. The woman with whom the defendant had been conversing possessed a crumpled wad of cash in the amount of eighty-nine dollars.

At trial, the defendant testified that, about four days prior to the incident, he sold Southworth illegal drugs and that Southworth had not paid him for the drugs. He admitted that he asked Southworth for his money and that after Southworth had removed cash from the

register, he "snatched" it from his hand. The defendant also testified that, after he had left the restaurant, he gave the money to his girlfriend, who was in the department building, and that he was unaware that Williams had been observing him. Additional facts will be set forth as necessary in the context of the defendant's claims.

I

The defendant first claims that the evidence presented was insufficient to support his conviction of robbery in the first degree under § 53a-134 (a) (3) because the state failed to prove beyond a reasonable doubt that he used or threatened the use of a dangerous instrument, to wit a box cutter razor,[3] as required by the statute. We agree.[4]

"When reviewing a claim of insufficiency of evidence, our task is twofold: We first review the evidence presented at trial, construing it in the light most favorable to sustaining the facts expressly found by the trial court or impliedly found by the jury. We then decide whether, upon the facts thus established and the inferences reasonably drawn therefrom, the trial court or the jury could reasonably have concluded that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Lavigne*, 57 Conn. App. 463, 468, 749 A.2d 83 (2000).

---

[3] The substitute long form information, filed by the state on June 15, 2000, charged the defendant with a violation of § 53a-134 (a) (3) and alleged that the defendant, "in the course of committing a larceny and in the immediate flight therefrom, used and threatened the immediate use of physical force upon Barry Southworth by means of a dangerous instrument, to wit; a box cutter razor for the purpose of compelling Barry Southworth to deliver up a sum of U.S. currency."

[4] The defendant concedes that the state presented sufficient evidence to convict him of the lesser included offense of robbery in the third degree in violation of General Statutes § 53a-136. The court instructed the jury that it could consider robbery in the third degree as a lesser included offense.

"It is well settled that in reviewing a defendant's challenge to a verdict based on insufficient evidence, we defer to the jury. . . . We do not sit as a [seventh] juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record. We have not had the jury's opportunity to observe the conduct, demeanor, and attitude of the witnesses and to gauge their credibility. . . . The scope of our factual inquiry on appeal is limited. This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict. . . . [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational tier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Young*, 56 Conn. App. 831, 835–36, 746 A.2d 795, cert. denied, 253 Conn. 904, 753 A.2d 939 (2000).

"While the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Bell*, 68 Conn. App. 660, 665, 792 A.2d 891, cert. denied, 260 Conn. 921, 797 A.2d 518 (2002).

It is clear that the evidence was sufficient to prove beyond a reasonable doubt that the defendant committed a larceny at the time, date and place alleged, and that he threatened the use of immediate physical force

on Southworth. The evidence, however, was not sufficient to demonstrate that the defendant threatened to inflict such immediate physical force by means of a dangerous instrument, that is, a box cutter razor, as alleged in the information pursuant to § 53a-134 (a) (3).

Section 53a-134 (a) (3) applies when a defendant "uses or threatens the use of a dangerous instrument . . . ." That section is unlike § 53a-134 (a) (4), which applies when a defendant "displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm . . . ." The issue in this case is not whether the seized box cutter razor is a dangerous instrument, but whether the evidence showed that the defendant used or threatened to use it. It is not relevant to our inquiry whether the defendant was actually armed during the crime, as it is possible to be armed, or in possession of a dangerous instrument such as the box cutter razor, without either using or threatening to use of that instrument. See *State* v. *Dolphin*, 203 Conn. 506, 518, 525 A.2d 509 (1987).

We interpret subdivision (3) of § 53a-134 (a) to require either the actual use of a dangerous instrument, or its threatened use, demonstrated by either an actual display or words combined with an overt display of the threatened instrument. A conviction pursuant to § 53a-134 (a) (3) cannot stand if the evidence merely shows that the defendant was armed with a dangerous instrument, or that he gave the impression by his words or conduct that he was armed with a dangerous instrument. Viewed in the light most favorable to sustaining the verdict, the evidence adduced at trial demonstrated that the defendant kept his right hand in his pocket and said words to the effect of "give me the money or I'll hurt you real bad." The impression that the defendant gave that he had something in his right front pocket was insufficient to prove the commission of the crime as charged. Likewise, the defendant's words, either con-

sidered alone or with the impression he created by his conduct, did not satisfy the statutory requirement that the defendant used or threatened to use the box cutter razor.

Although we reverse the conviction of robbery in the first degree because the evidence was insufficient on the element of the "use or threatened the use of a dangerous instrument," we conclude that the jury necessarily would have found the defendant guilty of the lesser charge of robbery in the third degree in violation of General Statutes § 53a-136, had it considered such charge. See *State* v. *Aleksiewicz*, 20 Conn. App. 643, 650–51, 569 A.2d 567 (1990). Accordingly, we will set aside the judgment and remand the case to the trial court with direction to render a judgment of conviction of robbery in the third degree and to resentence the defendant accordingly.

II

The defendant next claims that the court abused its discretion in allowing the state to amend the second part of the information without first affording him a hearing in probable cause. We disagree.

The following procedural history underlies this claim. The state originally charged the defendant, in the first part of a long form information, with the crime of robbery in the first degree and, in second part of the information, with having committed two prior felonies, namely, robbery in the first degree, on two separate occasions. After the jury convicted the defendant on the underlying robbery charge, the defendant made an oral motion to dismiss the second part of the information. The gist of the defendant's argument at the subsequent hearing on that motion was that because a conviction on the underlying robbery charge and a conviction under the second part of the information exposed him to a possible term of life imprisonment,

he was both constitutionally and statutorily entitled to a hearing in probable cause. He further pointed out that the court had failed to afford him such a hearing. The court agreed that the defendant should have been afforded a hearing in probable cause, but denied the motion because the defendant was seeking to dismiss the second part of the information in its entirety. The court suggested that the state amend the second part of the information to reflect a single predicate conviction, thereby exposing the defendant to a maximum forty years imprisonment rather than a term of life imprisonment.

Thereafter, the state amended the second part of the information to charge the defendant with a single predicate conviction.[5] The defendant filed a motion to dismiss this amended second part of the information. On August 9, 2000, the court denied the defendant's motion. On August 30, 2000, the state again amended the second part of the information, charging the defendant as a persistent serious felony offender with a single predicate felony conviction for robbery in the first degree on September 15, 1985. Later on August 30, 2000, a jury returned a guilty verdict as to the second part of the information.[6]

---

[5] The record shows that the defendant was advised of this amended information by a court clerk on August 9, 2000, in a courtroom holding area.

[6] The state's amended second part of the information, filed August 30, 2000, charged the defendant with being a persistent serious felony offender. In the information, the state failed to cite the correct statute, § 53a-40 (b), but cited § 53a-40 (a) (2) (c), applicable to persistent dangerous felony offenders. At oral argument on the defendant's motion to dismiss the second part of the information, the state clearly manifested its intent to charge the defendant as a persistent serious felony offender. Despite the fact that the state might have originally intended to charge the defendant as a persistent dangerous felony offender earlier in the case, the defendant did not object to being charged as a persistent serious felony offender. Although the court's judgment file reflects that the defendant was convicted as a persistent serious felony offender, that court likewise inadvertently cited § 53a-40 (a) (2) (c) in its judgment. Because the parties both concede in their briefs that the defendant was charged and convicted as a persistent serious felony offender, we view the inaccurate statutory citations to be of no consequence.

"Although prosecutors enjoy broad discretion in deciding what offenses to charge, that discretion is not unlimited." *State* v. *Salgado*, 257 Conn. 394, 406, 778 A.2d 24 (2001). Practice Book § 36-18 limits the state's ability to amend substantively an information after the commencement of trial.[7] "Practice Book § 624 [now § 36-18] is primarily a notice provision. Its purpose is to ensure that the defendant has adequate notice of the charges against which he must defend." (Internal quotation marks omitted.) *State* v. *Rodriguez*, 69 Conn. App. 779, 793, 796 A.2d 611, cert. denied, 260 Conn. 938, 802 A.2d 91 (2002).

In the present case, the defendant does not claim that the state lacked the authority to amend the information, but that the court abused its discretion in allowing the state to amend the second part of the information. He argues that the original second part of the information was invalid as a matter of law because the court did not conduct a hearing in probable cause, and he posits that the amended information charged him with an additional offense.[8] We do not agree. We note at the outset that persistent offender status alleged in the second part of the information did not create a separate substantive offense. The information alleged the applicability of a sentence enhancement provision. See *State*

Furthermore, in light of our resolution of the defendant's first claim, the defendant remains eligible to be convicted as a persistent serious felony offender. On remand, we instruct the trial court to so convict the defendant under § 53a-40 (b) and to sentence him accordingly.

[7] Practice Book § 36-18 provides: "After commencement of the trial for good cause shown, the judicial authority may permit the prosecuting authority to amend the information at any time before a verdict or finding if no additional or different offense is charged and no substantive rights of the defendant would be prejudiced. An amendment may charge an additional or different offense with the express consent of the defendant."

[8] The state argues that the appeal is moot because we can no longer grant practical relief, i.e., order the court to hold a hearing in probable cause. It argues, therefore, that we lack subject matter jurisdiction over the claim. We disagree with the state's argument and need not address it further.

v. *Sanko*, 62 Conn. App. 34, 42–44, 771 A.2d 149, cert. denied, 256 Conn. 905, 772 A.2d 599 (2001). Accordingly, the state did not charge the defendant with an additional or different offense by means of its amended second part of the information.

"It is within the trial court's discretion to allow an amendment to the information. On appeal, review of the trial court's decision to permit an amendment to the information is one of abuse of discretion." *State* v. *Prat*, 66 Conn. App. 91, 99, 784 A.2d 367 (2001). "Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Valentine*, 255 Conn. 61, 69, 762 A.2d 1278 (2000). "Discretion means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. . . . It goes without saying that the term abuse of discretion does not imply a bad motive or wrong purpose but merely means that the ruling appears to have been made on untenable grounds." (Internal quotation marks omitted.) *Durso* v. *Aquilino*, 64 Conn. App. 469, 472, 780 A.2d 937 (2001).

We note that the defendant does not claim, nor can he, that he lacked notice of the state's intent to seek an enhanced penalty. Instead, he argues that the court should have dismissed the second part of the information and not have permitted the state to amend it. He argues that by permitting the state to amend the second part of the information to charge one predicate conviction rather than two, the court gave the state "a second bite at the apple." The defendant claims that because the original second part of the information was "invalid as a matter of law," for the reasons set forth in his motion to dismiss, allowing the amendment "permitted

the state to subject him to an enhanced penalty for a charge that, in effect, constituted an additional offense."

We conclude, as did the trial court, that the defendant's challenge to the amended information fails because the state's failure to afford him a hearing in probable cause did not cause him harm.[9] Once the state amended the information, the defendant no longer faced the possibility of a life sentence. It is well settled that a hearing in probable cause is a prerequisite to the prosecution for any crime punishable by death or life imprisonment. See Conn. Const., art. I, § 8; General Statutes § 54-46.

Furthermore, the defendant had ample notice of the more serious information and was later advised on the less serious second part of the information. We do not agree that the defendant was prejudiced by the court's action and conclude that the action complained of did not constitute an abuse of discretion.

### III

The defendant finally claims that he was deprived of his constitutional right to a speedy trial because sixteen months intervened between his arraignment and the commencement of trial. We disagree.

The record discloses the following additional facts. On February 18, 1999, the defendant was arraigned on the underlying robbery charge. On June 15, 2000, during jury selection, the defendant submitted a written pro se motion to dismiss, alleging a violation of his right to a speedy trial. Although counsel represented him, the defendant complained that counsel had been inactive during the sixteen month interval and negligent in not

[9] A probable cause hearing is a jurisdictional prerequisite affecting not subject matter but jurisdiction over the person of the defendant. *State* v. *John*, 210 Conn. 652, 665 n.8, 557 A.2d 93, cert. denied, 493 U.S. 824, 110 S. Ct. 84, 107 L. Ed. 2d 50 (1989).

filing a motion for a speedy trial. At no time did the defendant seek to remove his counsel.

The court denied the defendant's motion to dismiss. The court noted, in an articulation, that "[t]he defendant conceded that no motion for speedy trial had ever been filed in the instant case nor in either of the two other cases which were then pending against him." The court concluded that the defendant had failed to comply with Practice Book § 43-41 and further concluded that the delay complained of did not prejudice him.

"The determination of whether a defendant has been denied his right to a speedy trial is a finding of fact, which will be reversed on appeal only if it is clearly erroneous. . . . The trial court's conclusions must stand unless they are legally and logically inconsistent with the facts. . . . Although the right to a speedy trial is fundamental, it is necessarily relative, since a requirement of unreasonable speed would have an adverse impact both on the accused and on society." (Citation omitted; internal quotation marks omitted.) *State* v. *Lacks*, 58 Conn. App. 412, 417, 755 A.2d 254, cert. denied, 254 Conn. 919, 759 A.2d 1026 (2000).

Insofar as the defendant claims that the court improperly denied his motion to dismiss on speedy trial grounds, we conclude that the court properly found that the defendant lacked the right to move to dismiss the charges against him under Practice Book § 43-41. Section 43-41 provides in relevant part: "If the defendant is not brought to trial within the applicable time limit set forth in Sections 43-39 and 43-40, and, absent good cause shown, a trial is not commenced within thirty days of the filing of a motion for speedy trial by the defendant at any time after such time limit has passed, the information shall be dismissed with prejudice, on motion of the defendant filed after the expiration of such thirty day period. . . ." It is plainly evident from

this language that, before a defendant may move for dismissal on speedy trial grounds, he or she must first file a motion for a speedy trial. In addition, Practice Book § 43-41 provides in relevant part: "Failure of the defendant to file a motion to dismiss prior to the commencement of trial shall constitute a waiver of the right to dismissal under these rules."

This court has also stated: "Because a motion to dismiss is waived unless filed before the commencement of trial and a motion for a speedy trial must precede a motion for dismissal, logically a motion for a speedy trial must also be filed before the commencement of trial in order to be afforded a remedy under the rules. . . . For the purpose of the speedy trial rules, commencement of trial means the commencement of the voir dire examination in jury cases and the swearing-in of the first witness in nonjury cases." (Citation omitted; internal quotation marks omitted.) *State* v. *Lacks*, supra, 58 Conn. App. 415–16. By not filing a motion for a speedy trial, the defendant waived his statutory speedy trial claim.

To the extent that the defendant also claims that his constitutional right to a speedy trial was violated, we do not agree. "The Supreme Court of the United States and [the Connecticut Supreme Court] have identified four factors which form the matrix of the defendant's constitutional right to speedy adjudication: [l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. . . . A balancing test is to be applied on a case by case basis. None of the factors standing alone demands a set disposition; rather it is the total mix which determines whether the defendant's right was violated." (Citations omitted; internal quotation marks omitted.) Id., 417.

The defendant argues that the sixteen month delay prior to the commencement of trial in this case warrants

an inquiry into the other factors set forth previously. We observe that "[t]he length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." (Internal quotation marks omitted.) *State* v. *Martin*, 56 Conn. App. 98, 103, 741 A.2d 337 (1999), cert. denied, 252 Conn. 926, 746 A.2d 790 (2000). Further, despite the fact that "[o]ur courts have not held that any particular length of delay is presumptively prejudicial, but have stated that an extensive delay warrants an inquiry into the other factors"; id.; this court has held that a delay of more than two years is sufficient to consider the other three factors. See also *State* v. *Almgren*, 12 Conn. App. 364, 369, 530 A.2d 1089 (1987).

In the present case, the delay of sixteen months did not automatically demonstrate a denial of the defendant's right to a speedy trial. The defendant did not present evidence that the delay resulted from purposeful action by the state; rather, the record reflects that other charges were pending against the defendant during that time. Further, the court found that the defendant did not assert his right to a speedy trial until the trial itself. The court also found that, despite his claim that the delay would prejudice his ability to call witnesses on his behalf, the defendant was not prejudiced by the delay. The court found in this regard that the defendant had not even provided to his own counsel the names of potential witnesses until a week prior to trial and concluded that any prejudice in this regard resulted from his own lack of diligence. The court likewise rejected the defendant's claim that the delay may have diminished the memory of his witnesses.

We conclude that the court's findings are supported by the record and that the defendant was not denied his constitutional right to a speedy trial.

The judgment of conviction of robbery in the first degree is reversed and the case is remanded with direction render judgment of conviction of robbery in the third degree and to resentence the defendant accordingly. The court is further directed to sentence the defendant as a persistent serious felony offender under § 53a-40 (b). The judgment is affirmed in all other respects.

In this opinion the other judges concurred.